Marc X. Carlos (CSB 125725)
LAW OFFICE OF MARC X. CARLOS
424 "F" Street, Suite 205
San Diego, California 92101
(619) 702-3226
marc@marccarloslaw.com

Devin Burstein (CSB 255389)
WARREN & BURSTEIN
501 West Broadway, Suite 240
San Diego, California 92101
(619) 234-4433
db@wabulaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  19-cr-486-CRB |
| Plaintiff, | Defendants' notice of motion and motion to dismiss the indictment for constitutional violations |
| v. | |
| ROBERT ROWEN AND TERESA SU, | December 16, 2020, at 1:30 p.m. |
| Defendants. | |

All parties, please take notice that the defendants will, and hereby do, move the Court to grant this motion to dismiss the indictment.

//

//

//

//

//

//

1

## A.   Introduction.

The law is clear: "[individuals] may not be punished for exercising a protected statutory or constitutional right."  *United States v. Goodwin*, 457 U.S. 368, 372 (1982).  This prosecution violates that rule.

Dr. Rowen and Dr. Su lawfully petitioned the courts to resolve their outstanding tax issue.  That conduct was constitutionally protected.  The First Amendment and Due Process guarantee the right to seek redress in the courts.

The government, however, used that protected conduct to prosecute them.  The indictment in this case alleges the lawsuits were overt acts of conspiracy and tax evasion.  This is more than the Constitution will permit. The indictment should be dismissed.

## B.   Relevant facts.

The defense provided an extended factual summary in our motion to suppress evidence.  In this motion, therefore, we include only those facts relevant to the legal issues presented; Drs. Rowen and Su's lawsuits against the United States, and the government's use of that protected conduct in this prosecution.

### 1.   The 2005 case.

In September 2005, Dr. Rowen filed suit pro se against the United States in the Northern District of California.  *See* 05-cv-3766-MMC.  He sought a

declaratory judgment regarding his status as a taxpayer.  APP:1-2.[1]  After the government responded by moving to dismiss for lack of subject-matter jurisdiction, Dr. Rowen conceded the case should be dismissed (which it was).  APP:1-2.

    2.    The 2012 case.

Several years later, in November 2010, Dr. Rowen and Dr. Su filed amended tax returns for 2003 through 2008.  The returns claimed a significant casualty loss.  The casualty loss was important because it would be carried forward to reduce tax liability.

The IRS did not process the amended returns or allow a reduction for the casualty loss.

As a result, on November 13, 2012, Dr. Rowen and Dr. Su filed a lawsuit in the Northern District of California seeking a writ of mandamus to compel the IRS to process their amended returns.  *See* 12-cv-5831-RS; APP:3.

Their petition explained: "Petitioners' annual tax forms were filed in August 2010 at the specific direction of an IRS representative.  Petitioners filed corrected returns at the end of November 2010 to comply with the 1040x casualty loss. After additional unnecessary delays over the following year, one

---

[1] "APP" refers to the appendix filed in support of this motion.

or more Respondents admitted intentional destruction of Petitioners' annual income tax forms, by shredding them, and required Petitioners to resubmit their entire annual income tax forms and records. Then after additional unnecessary delays, Respondents directed Petitioners to resubmit all of the annual income tax forms a second time bearing original signatures." APP:6.

The Petition continued, "Respondents intentionally misstated federal income tax law as it applied to the specific facts of Petitioners' annual income tax forms, and after a delay of more than two years, still have not processed Petitioners' annual income tax forms, which intentionally prevents Petitioners from the findings necessary to timely file their annual income tax forms for the last two years." APP:6.

Further, "Petitioners discovered they would be able to substantiate a sizeable casualty loss, with records from the Bankruptcy Court and the titles from property records from the Recorder's office in support thereof. Petitioners filed their corrected federal income tax returns in November 2010 to comply with the 1040x casualty loss as married filing jointly. The result of the processing of the Petitioners' income tax returns and the casualty loss would prove Petitioners owed nothing to the IRS and would be entitled to carry the unused portion of the casualty loss forward for their next income tax returns." APP:10.

The parties' litigated the claim for almost two years. During that litigation, in motions to expand the record filed on July 9, 2014, and July 25, 2014,[2] Drs. Rowen and Su explained the IRS had wrongly seized assets from their home and office (during the searches that are the subject of their motion to suppress). APP:20-28.[3] To this end, they claimed the IRS engaged in wrongful collection activities against them, as a result of the failure to process the amended returns. APP:20-28.

They also argued the money taken during the searches belonged to Dr. Su alone as her separate property under California law. APP:20-28.

Ultimately, on September 30, 2014, the court granted the government's motion to dismiss. APP:29. Importantly, however, the court did not find the suit was frivolous. Rather, it dismissed on procedural grounds, concluding that mandamus was inappropriate because "the relief sought cannot properly be characterized as a ministerial act." APP:30.

---

[2] The superseding indictment lists these same filings as having been made on July 7 and 24, 2014. *See* Dckt. 27 at 7. The specific date, however, is not important. Rather, as discussed below, it is important that they were made in the course of litigation.

[3] Because the exhibits to the motions to expand are over 100 pages, counsel maintains copies of those filings but has not provided them.

### 3.    The 2014 case.

Separate from the federal suit, on July 29, 2014, Dr. Su filed suit against the United States in the Superior Court of California.  APP:34.[4]  She sought the state's intervention because, as noted, she alleged the federal government had improperly taken her property during the searches and was crediting the value of that property solely to Dr. Rowen's tax liabilities.  APP:34-43.  In other words, according to Dr. Su, not only was the seizure wrongful, the federal government was also violating California's community property law by failing to apply the proceeds of the seizure to *her* alleged outstanding tax liability as well.

The government removed the case to federal court in the Northern District of California.  *See* 14-cv-3540-VC; APP:31.  Eventually, the federal action was dismissed on stipulation and remanded to the Superior Court, where it was voluntarily dismissed on December 15, 2014.  APP:43.

For the next five years, Drs. Rowen and Su timely paid their taxes, and used much of their remaining income to pay down alleged past tax liabilities. They also negotiated in good faith with the IRS to resolve their case. Unfortunately, the government stopped negotiating.

---

[4] Counsel maintains copies of the exhibits referenced in Dr. Su's suit.

### 4.   This prosecution.

Instead, on September 26, 2019, it brought this prosecution against Dr. Rowen and Dr. Su.   A three-count superseding indictment followed on January 16, 2020.   *See* Dckt. 27.   Each of the three counts relies in part on the lawsuits just discussed.

Count one charges Drs. Rowen and Su with conspiracy in violation of 18 U.S.C. § 371.   As relevant, the alleged overt acts include:

> f. on or about November 13, 2012, ROWEN and SU filed a lawsuit against the United States of America in the U.S. District Court for the Northern District of California seeking to compel the IRS to file their amended joint U.S. Income Tax Returns for tax years 2003 through 2008;

> g. on or about July 29, 2014, SU filed an action against the United States of America in the Superior Court of California, County of Sonoma, falsely representing that gold and silver coins seized by the IRS in March 2014, were her separate property;

> h. on or about July 7 and 24, 2014, ROWEN and SU falsely represented to the U.S. District Court for the Northern District of California, that all of the assets seized by the IRS in

March 2014, which included gold and silver coins, were SU's separate property[.]

Count two charges Dr. Rowen with tax evasion in violation of 26 U.S.C. § 7201. His alleged evasive acts include:

> filing a lawsuit on or about September 19, 2005, against the United States of America in the U.S. District Court for the Northern District of California for a declaratory judgment as to "whether or not the plaintiff is a taxpayer pursuant to, and/or under 26 U.S.C. § 7701(a)(14)[.]"

> filing a lawsuit against the United States of America in the U.S. District Court for the Northern District of California on November 13, 2012, seeking to compel the IRS to file his amended joint U.S. Income Tax Returns for tax years 2003 through 2008;

> falsely representing to the U.S. District Court for the Northern District of California that the assets seized by the IRS in March 2014, including gold and silver coins, were SU's separate property.

Count three charges Dr. Su with tax evasion in violation of 26 U.S.C. § 7201. Her alleged evasive acts include:

on or about November 13, 2012, filing a lawsuit against the United States of America in the U.S. District Court for the Northern District of California seeking to compel the IRS to file ROWEN and SU's amended joint U.S. Income Tax Returns for tax years 2003 through 2008;

on or about July 7 and 24, 2014, falsely representing to the U.S. District Court for the Northern District of California, that all the assets seized by the IRS in March 2014, which included gold and silver coins, was her separate property.

on or about July 29, 2014, filing an action against the United States of America in the Superior Court for the State of California, County of Sonoma, falsely representing that gold and silver coins seized by the IRS in March 2014, were her separate property[.]

Dckt. 27 at 7, 9-11.

As discussed below, these allegations are improper and render the indictment constitutionally infirm.

## C.   Discussion.

### 1.   The rights at issue.

This motion flows from the intersection of two constitutional principles: The right to petition the government and the prohibition on prosecuting protected conduct.

"'[T]he right of access to the courts is a fundamental right protected by the Constitution.' The First Amendment 'right of the people . . . to petition the Government for a redress of grievances,' which secures the right to access the courts, has been termed 'one of the most precious of the liberties safeguarded by the Bill of Rights.'" *Ringgold-Lockhart v. County of L.A.*, 761 F.3d 1057, 1061 (9th Cir. 2014) (citations omitted).  Indeed, "the right to petition the government for redress of grievances is such a fundamental right as to be implied by '[t]he very idea of a government, republican in form.'" *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002) (citation omitted).

Equally well-established, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citations omitted).

10

2. <u>The indictment violates Drs. Rowen and Su's rights</u>.

Here, the prosecution has done just that. Drs. Rowen and Su filed claims against the government seeking redress.[5] Although their suits did not result in relief, neither were they dismissed as frivolous. No sanctions were imposed. In short, there was nothing unlawful about the suits themselves. Thus, they were protected under the First Amendment. *See Ringgold-Lockhart*, 761 F.3d at 1061.

The government, therefore, was barred from using them as part of a criminal prosecution. But that is what happened. As discussed, each of the three counts relies in part on the lawsuits.[6] This is a constitutional non-starter. Attempting to criminalize these suits – alleging that lawful attempts

---

[5] As noted, Mr. Rowen filed suit in 2005. The couple jointly sought mandamus relief in 2012. And Ms. Su sought state court assistance in 2014.

[6] <u>Count one</u> – alleged overt acts "f" and "h" are from the 2012 mandamus suit; and overt act "g" is from Ms. Su's 2014 Superior Court action.

<u>Count two</u> – alleged evasive act bullet-point 5 is taken from Mr. Rowen's 2005 suit for declaratory judgment; and bullet-points 7 and 8 are from the 2012 mandamus suit.

<u>Count three</u> – alleged evasive act bullet-points 4 and 5 are taken from the 2012 mandamus suit; and bullet-point 6 is from Ms. Su's 2014 Superior Court action.

to secure judicial intervention are criminal acts – is "a due process violation of the most basic sort[.]" *Bordenkircher*, 434 U.S. at 363.

>    3.    *Pendergraft is persuasive*.

On this issue, the most persuasive authority comes from the Eleventh Circuit's analysis in *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002).   James Pendergraft was a licensed medical doctor in Florida.   He performed abortions as part of his practice. *See id*. at 1200.   Seeking to expand his business, he bought a medical office building in Marion County.   This "sparked a lot of controversy." *Id*.

The local government sought to dissuade Dr. Pendergraft from moving forward with his new clinic. *See id*.   This, in turn, led to discussions about the county purchasing the building. *See id*. at 1200-01.   And consistent with the cliché that the craziest things happen in Florida, the negotiations turned into a criminal investigation, which eventually resulted in an indictment against Dr. Pendergraft and his business associate.

The government charged the defendants with, among other crimes, extortion and conspiracy to commit extortion.   According to the government, the charges stemmed from the defendants' "threat to seek damages in a lawsuit against Marion County, Florida, and to use false evidence in support of the lawsuit." *Id*. at 1200.

The defendants moved to dismiss the indictment, arguing, among other things, that it "violated Dr. Pendergraft's First and Fourteenth Amendment rights.  Because he had a right to assert claims against the government, he and [his co-defendant] could not be charged with extortion for their actions in connection with a lawsuit against the government."  *Id.* at 1203.  The district court denied the motion, and the defendants were convicted after trial.

On appeal, the Eleventh Circuit reversed, explaining: "under our system, parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights.  For this reason, litigants may be sanctioned for only the most frivolous of actions.  These sanctions include tort actions for malicious prosecution and abuse of process, and in some cases recovery of attorney's fees, but even these remedies are heavily disfavored because they discourage the resort to courts."  *Id.* at 1206 (citation omitted).

The court continued: "History has taught us that, if people take the law into their own hands, an endless cycle of violence can erupt, and we therefore encourage people to take their problems to court. We trust the courts, and their time-tested procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty. While our process is sometimes expensive, and occasionally inaccurate, we have confidence in it. When a

citizen avails himself of this process, his doing so is not inherently 'wrongful.'" *Id.* at 1206-07.

Further, the litigation at issue was "against a county government. The right of citizens to petition their government for the redress of grievances is fundamental to our constitutional structure. A threat to file suit against a government, then, cannot be 'wrongful' in itself."   *Id.* at 1207 (citation omitted).  The court explained, "[w]hile the case before us involves a threat to sue a government, *we are troubled by any use of this federal criminal statute to punish civil litigants* . . . .  The prospect of such civil cases ending as criminal prosecutions gives us pause.  Moreover, this addition to the federal criminal arsenal would have other disconcerting implications in the civil arena."  *Id.* (emphasis added).

In short, "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system." *Id.* at 1208.  The court, therefore, concluded the indictment could not stand. *See id.* at 1208-10.

4.   Dismissal is the remedy.

The same is true here.  While there are differences between this case and *Pendergraft*, for present purposes, those distinctions are irrelevant.   This

14

motion relies not on factual similarity, but on the Eleventh Circuit's rationale, which strongly supports Drs. Rowen and Su's claim.

Here too, filing civil lawsuits against the government was not wrongful. To the contrary, it was the constitutionally preferred and constitutionally protected method of seeking redress. As a result, the government cannot use those lawsuits to prosecute the litigants. Borrowing from *Pendergraft*, "prosecuting litigation activities as federal crimes [] undermine[s] the policies of access and finality that animate our legal system." *Id.* at 1208. Moreover, and more important, it runs afoul of the Constitution. As such, it is "'patently unconstitutional.'" *Bordenkircher*, 434 U.S. at 363 (citation omitted).

Nor would striking the offending allegations cure the infirmity.[7] At this point, there is no way to determine what caused the grand jurors to indict. *See United States v. Du Bo*, 186 F.3d 1177, 1179-80 (9th Cir. 1999) (citing *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) ("To allow a prosecutor or court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure")). Certainly, in

---

[7] To be clear, at a minimum, they should be stricken. *See* Fed. R. Crim. P. 7(d); *United States v. Laurienti*, 611 F.3d 530, 546-47 (9th Cir. 2010). But the relief should not stop there.

the pretrial context, the government cannot meet its burden to demonstrate the inclusion of the protected lawsuits was harmless beyond a reasonable doubt. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986). Thus, dismissal is the appropriate remedy. *Cf. United States v. Alvarez*, 617 F.3d 1198, 1218 (9th Cir. 2010) (dismissing indictment as unconstitutional under the First Amendment).

## D.  Conclusion.

Dr. Rowen and Dr. Su respectfully requests the Court grant this motion to dismiss the indictment.

Dated: October 7, 2020                     Respectfully submitted,

*/s/ Devin Burstein*
Marc X. Carlos
Devin Burstein
Attorneys for Mr. Rowen

*/s/ Sandeep Singh*
Sandeep Singh
Attorney for Ms. Su

# APPENDIX

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT J. ROWEN,

        Plaintiff,

  v.

UNITED STATES OF AMERICA,

        Defendant.

_____/

No. C-05-3766 MMC

**ORDER DISMISSING ACTION FOR
LACK OF JURISDICTION**

      Before the Court is the motion, filed October 7, 2005 by defendant United States of America, to dismiss the instant action for lack of subject matter jurisdiction.  In his response, plaintiff Robert J. Rowen ("Rowen") concedes that the Court lacks jurisdiction to hear the instant action, and that the action should be dismissed.

      Specifically, Rowen seeks a declaratory judgment against the United States of America with respect to "whether or not the plaintiff is a taxpayer pursuant to, and/or under 26 U.S.C. § 7701(a)(14)."  (See Compl. at 2.)  This Court lacks jurisdiction to issue a declaratory judgment "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986," a code section that is not at issue in the instant action.  See 28 U.S.C. § 2201; see also Hughes v. United States, 953 F.2d 531, 536-537 (9th Cir. 1991) (affirming dismissal of claim for declaratory relief under § 2201 where claim concerned question of tax liability).

1

1        Accordingly, defendant's motion to dismiss is hereby GRANTED, and the instant

2    action is hereby DISMISSED.

3        **IT IS SO ORDERED.**

4    Dated: November 2, 2005

                        MAXINE M. CHESNEY
                        United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**FILED**

NOV 13 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Robert Rowen, *pro se*
    321 South Main Street #537
2   Sebastapol, California 95472
    Phone: (707) 328-3012
3

4          UNITED STATES DISTRICT COURT FOR THE
                NORTHERN DISTRICT OF CALIFORNIA
5

6   Robert Rowen and Teresa  Su,         :    **CV 12 5831**

                     Petitioners,        :    Case No. _____
7
                                         :                        **KAW**
8                    v.                   :

9   Douglas H. Shulman, Commissioner of  :
    Internal Revenue; Kristen Hoffmeister, :
10  Appeals Officer; Ed Sabrak, Revenue   :
    Officer; Rosalind C. Kochmanski, Field :
11  Director, Accounts Management; Ann    :
    Hagemeyer, Operations Mgr. ASFR/      :
12  Centralized Reconsideration; Ursula   :
    Dean, Operations Manager; and Teresa  :
13  Amper, Settlement Officer,            :

                                         :
14                   Respondents.:
                                         :
15  ─────────────────────────────────────

16          ROBERT ROWEN'S AND TERESA SU'S
            PETITION FOR A WRIT OF MANDAMUS

17          COMES NOW Petitioners Robert Rowen and Teresa Su, (hereinafter Mr. Rowen

18  and Ms. Su) by leave of court pro se, and submits Mr. Rowen's and Ms. Su's Petition for

19  Writ of Mandamus pursuant to 28 U.S.C. § 1361.

20                            JURISDICTION

21          District courts "have original jurisdiction of any action in the nature of mandamus

22  to compel an officer or employee of the United States or any agency thereof to perform

23  a duty owed to the plaintiff." 28 U.S.C. § 1361.

24
    ROBERT ROWEN'S AND TERESA SU'S
    PETITION FOR A WRIT OF MANDAMUS                           PAGE 1 OF 18

3

1    Mandamus relief is available to compel an official of the United States to perform

2  a duty owed to an individual only if (1) the individual's claim is clear and certain; (2) the

3  official's duty is "ministerial and so plainly prescribed as to be free from doubt"; and (3)

4  no other adequate remedy is available.[1] Whether each element of the mandamus test is

5  satisfied is a question of law. Id

6                                   INTRODUCTION

7    It is undisputed that the internal revenue code imposes mandatory duties on the

8  Respondents in this case to timely perform specific designated functions, according to

9  their specific assignments. These specific duties were, and are, owed to the Petitioners.

10  Respondents have failed or refused to timely perform specific duties owed to the

11  Petitioners. Respondents' actions in this case have caused intentional destruction of

12  Petitioners' records, repeated unnecessary delays, and intentional errors that caused

13  irreparable injury to the Petitioners, and prevented Petitioners' timely compliance with

14  the filing requirements of the Petitioners' annual income tax forms.

15       RESPONDENTS' DUTIES OWED TO PETITIONERS ARE MINISTERIAL

16    Respondent officials duties owed to the Petitioners were, and are "ministerial and

17  so plainly prescribed as to be free from doubt". The Taxpayer Bill of Rights 2 modified

18  26 U.S.C. Sec. 6404(e)(1)(A) to add the word "unreasonable" before the words "error or

19  delay" and to change "ministerial act" to "ministerial or managerial act." Sec. 301(a), 110

20  Stat. 1457. These changes, however, only apply to interest accruing on deficiencies for

21  tax years beginning after July 30, 1996, see Sec. 301(c), *ibid.*

22    Managerial act. The term "managerial act" means an administrative act that

23  occurs during the processing of a case involving the temporary or permanent loss of

24  ───────────────
[1] *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                           PAGE 2 OF 18

4

1   records or the exercise of judgment or discretion relating to management of personnel.

2   A decision regarding the proper application of federal tax law is not a managerial act. A

3   decision made by a supervisor to, for instance, send a revenue agent to a training

4   course and not reassign that agent's cases, resulting in a delay of some sort, would be

5   a managerial act. [2] (Emphasis added)

6        Ministerial act. The term "ministerial act" means a procedural or mechanical act

7   that does not involve the exercise of judgment or discretion and that occurs during the

8   processing of a case after all prerequisites of the act, such as conferences and review

9   by supervisors, have taken place. A decision regarding the proper application of federal

10  tax law is not a ministerial act.[3] (Emphasis added)

11                   PETITIONERS' CLAIM IS CLEAR AND CERTAIN

12       Petitioners' claim to the duties owed to the Petitioners by Respondents is clear

13  and certain, because "ministerial acts" committed by Respondents were procedural or

14  mechanical acts that did not involve the exercise of judgment or discretion and that

15  occurred during the processing of Petitioners' case after all prerequisites of the act,

16  such as conferences and review by supervisors, had taken place. Shredding Petitioners'

17  annual income tax forms was also a ministerial act, that was procedural or mechanical.

18                   ACTS COMMITTED BY RESPONDENTS

19       Respondents admitted unnecessary delays, intentional failure to submit

20  Petitioners' annual income tax forms for processing, and intentional destruction of

21  Petitioners annual income tax forms. These were ministerial acts. (Emphasis added)

22

---

23  [2] See Regulations section 301.6404-2 for more information. (Instructions for Form 843 (Rev. December 2012))

24  [3] See Regulations section 301.6404-2 for more information. (Instructions for Form 843 (Rev. December 2012))

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS            PAGE 3 OF 18

5

1    Petitioners' annual tax forms were filed in August 2010 at the specific direction of

2  an IRS representative. Petitioners filed corrected returns at the end of November 2010

3  to comply with the 1040x casualty loss. After additional unnecessary delays over the

4  following year, one or more Respondents admitted intentional destruction of Petitioners'

5  annual income tax forms, by shredding them, and required Petitioners to resubmit their

6  entire annual income tax forms and records.  Then after additional unnecessary delays,

7  Respondents directed Petitioners to resubmit all of the annual income tax forms a

8  second time bearing original signatures.

9    Respondents intentionally misstated federal income tax law as it applied to the

10  specific facts of Petitioners' annual income tax forms, and after a delay of more than two

11  years, still have not processed Petitioners' annual income tax forms, which intentionally

12  prevents Petitioners from the findings necessary to timely file their annual income tax

13  forms for the last two years.

14    Internal Revenue Code 6402 Creates Ministerial Duty to Grant Credit or Refund

15  Which Is Enforceable by a Mandamus Suit When the Government Induces Reliance by

16  Taxpayer.

17    <u>NO OTHER ADEQUATE REMEDY IS AVAILABLE TO THE PETITIONERS</u>

18    Under the circumstances of this case, Petitioners have no other adequate

19  remedy available to them. The Tax Court has no jurisdiction to grant Petitioners relief.

20    The tax court has no jurisdiction to order or to deny a refund, [4]  or to decide

21  equitable questions.[5]  Thus, the tax court has no jurisdiction to decide which of several

22

23  _____

[4] *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 542, 57 S.Ct. 855, 81 L.Ed. 1272 (1937).

24  [5] *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943).

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                                    PAGE 4 OF 18

6

1  claimants is entitled to a refund, [6] to decide who is entitled to the refund when someone

2  other than the person named in the deficiency notice has paid the tax, [7] or to resolve

3  disputes as to a right to a refund that may hinge upon some contingency beyond mere

4  overpayment. [8] The taxpayer must resort to the district court or the court of claims for a

5  resolution of such disputes or for an order granting a refund. [9] Tax Court has no

6  jurisdiction to look behind IRS' statement.[10] Tax Court has no jurisdiction to review IRS'

7  determination to proceed or not to proceed,[11] and the Tax Court has no jurisdiction to

8  review request for innocent-spouse relief.  This position had already been endorsed by

9  the Ninth Circuit, [12] and would be again five days later by the Eighth Circuit. [13] Tax

10  Court has no jurisdiction over section 6015 petitions "where no deficiency has been

11  determined by the IRS" [14] and *Petalumas I*,[15] *II*,[16] and *III*,[17] with D.C. Circuit deciding

12  the Tax Court has no jurisdiction when IRS had conceded and stipulated jurisdiction.

13       The Tax Court has no jurisdiction to re-determine an alleged deficiency unless

14  the IRS first issues a notice of deficiency. *See, e.g., Laing*, 423 U.S. at 165 n. 4, 96

15  S.Ct. at 477 n. 4 ("A deficiency notice is of import primarily because it is a jurisdictional

16  prerequisite to a taxpayer's suit in the Tax Court for redetermination of his tax liability");

17

---

18  [6] *Huntington National Bank*, 13 T.C. 760 (1949).
    [7] *John A. Snively, Sr.*, 20 T.C. 136 (1953).
    [8] *Robbins Tire and Rubber Co., Inc.*, 53 T.C. 275, 279 (1969); *see Empire Ordnance Corp. v. Harrington*,
19  102 U.S.App.D.C. 14, 249 F.2d 680, 682 (1957).
    [9] *Hershal Weber, Petitioner v. Commissioner of Internal Revenue*, 138 T.C. No. 18.
20  [10] *Anonymous 1 and Anonymous 2*, Docket No. 12472-11W.
    [11] *Raymond Cohen*, 139 T. C. 12, filed 10/9/12.
21  [12] *Commissioner v. Ewing*, 439 F.3d 1009 (9th Cir. Feb. 28, 2006), *revg.* 118 T.C. 494 (2002), *vacating* 122
    T.C. 32 (2004).
    [13] *Bartman v. Commissioner*, 446 F.3d 785 (8th Cir. May 2, 2006), *affg. in part, vacating in part T.C.*
22  *Memo.* 2004-93; *and See, Billings v. Commissioner*, 127 T.C. 7 (2006).
    [14] *Bartman, supra* 446 F.3d at 787- 788.
23  [15] *Petaluma FX Partners, LLC et al. v. Comm'r*, 131 T.C. 84 (2008) (Petaluma I).
    [16] *Petaluma FX Partners, LLC et al. v. Comm'r*, 591 F.3d 649 (D.C. Cir. 2010) (Petaluma II).
    [17] *Petaluma FX Partners, LLC et al. v. Comm'r*, 135 T.C. 581 (2010) (Petaluma III).
24

1   *Portillo v. Comm'r of Internal Revenue*, 932 F.2d 1128, 1132 (5th Cir.1991) ("the Tax

2   Court only has jurisdiction when the Commissioner issues a valid deficiency notice and

3   the taxpayer files a timely petition for redetermination"); *Robinson v. United States*, 920

4   F.2d 1157, 1160 (3d Cir.1990) (notice of deficiency is the taxpayer's "ticket to the Tax

5   Court" and is "a jurisdictional prerequisite to a suit in that forum" (internal quotation

6   omitted)).  Because the IRS did not send Petitioners a notice of deficiency before

7   Petitioners filed this petition for a writ of mandamus in this Court, the Tax Court lacked

8   jurisdiction over their petition. The tax court is without jurisdiction to decide whether Ms.

9   Su, the person who actually paid the tax, or Mr. Rowen, or someone else was entitled to

10   the refund. Once it has been determined there was no deficiency and there had been an

11   overpayment in a certain amount, it had no jurisdiction to consider or resolve any other

12   issue. Thus, the tax court could not bar the district court from deciding the very issues

13   that the tax court was without jurisdiction to determine. The district court has jurisdiction

14   under 28 U.S.C. 1346(a)(1) and 28 U.S.C. § 1361. Petitioners have no other adequate

15   remedy available to them other than this writ of mandamus.

16   <u>PETITIONERS' RIGHT TO THE PETITION FOR WRIT OF MANDAMUS</u>

17   Mandamus relief is available to compel the Respondent officials of the United

18   States to perform duties owed to Petitioners because, as shown above, (1) Petitioners'

19   claims are clear and certain; (2) the Respondents' duties are "ministerial and so plainly

20   prescribed as to be free from doubt"; and (3) no other adequate remedy is available.[18]

21   Petitioners are entitled to the writ of mandamus as a clear and undisputed matter of law.

22

23

24   [18] *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)

<u>ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS</u>

8

1      <u>REASON THIS PETITION FOR A WRIT OF MANDAMUS IS NECESSARY</u>

2          The Internal Revenue Code established married tax payers can elect whether to

3   file as married filing separately or married filing jointly;[19] In (b) (2) (A) it  limits the

4   election to within "3 years from the last date prescribed by law for filing the return for

5   such taxable year . .".  However, 26 USC 6013(B)(3)(A)(iii)" which states, in relevant

6   parts, as follows: (3) <u>When return deemed filed</u> **(iii)** <u>Where only one spouse filed a</u>

7   <u>separate return</u> prior to the making of the joint return, and the other spouse had gross

8   income of the exemption amount or more for such taxable year—<u>on the date of the filing</u>

9   <u>of such joint return.</u> (Emphasis added)

10         The intent of Section 6013(b)(2) has been addressed in a number of separate

11  circuits.  While a married person is prohibited from filing as a single person, married

12  persons are given the opportunity to file as married filing separately or as married filing

13  jointly. And there is a time limit intended for the filing of a joint return after both spouses

14  elected to file as married filing separately.

15         But in 26 USC 6013(b)(3)(A)(iii), <u>where only one spouse filed as married filing</u>

16  <u>separately</u> and the other spouse did not file,  even though the other spouse had an

17  income clearly not exempt, the law defines <u>the date of filing the joint return as the date</u>

18  <u>of filing</u>; not the date the married filing separate filing occurred, and is not limited by the

19  3 years explained in Section 6013(b)(2), but from the date of actual filing of the joint

20  return.  This intentional misstatement of law was in a letter from Respondent Ursula

21  Dean, dated October 19, 2012.  Where 26 USC 6013(b)(3)(A)(iii) applies <u>where only</u>

22  <u>one spouse filed as married filing separately</u> and the other spouse did not file.

23  _____
    [19] 26 U.S.C. 6013.

24
<u>ROBERT ROWEN'S AND TERESA SU'S</u>
<u>PETITION FOR A WRIT OF MANDAMUS</u>                           PAGE 7 OF 18

9

1    If the intent of the wording was to prevent Mr. Rowen from the benefits of filing

2  married filing jointly, after Ms. Su filed married filing separately, it would violate his

3  constitutional rights to Due process, Equal Rights and Fundamental Fairness. But there

4  appear to be a clear intent to prevent that from happening with the wording as explained

5  above.

6    Respondents repeatedly have intentionally misstated the law to the Petitioners.

7    Ms. Su filed a timely annual tax return for 2001 as married filing separately, but

8  Mr. Rowen did not file during that year.  At direction of a Revenue Officer, Petitioners'

9  annual tax forms were filed in August 2010. Petitioners discovered they would be able

10  to substantiate a sizeable casualty loss, with records from the Bankruptcy Court and the

11  titles from property records from the Recorder's office in support thereof.  Petitioners

12  filed their corrected federal income tax returns in November 2010 to comply with the

13  1040x casualty loss as married filing jointly.  The result of the processing of the

14  Petitioners' income tax returns and the casualty loss would prove Petitioners owed

15  nothing to the IRS and would be entitled to carry the unused portion of the casualty loss

16  forward for their next income tax returns.

17    Pursuant to 26 USC 6013(b)(3)(A)(iii), the Petitioners were entitled to apply the

18  results of their corrected income tax returns and their casualty loss to Ms. Su's 2001

19  married filing separately along with the other income tax forms that were all filed at the

20  same time.

21    The Respondents have repeatedly delayed submitting Petitioners' income tax

22  returns for processing, shredded Petitioners' income tax returns, and have repeatedly

23  misstated the law and facts as they apply to the Petitioners in this case.

24

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS

1   Additionally, Respondents misstated the law and facts as it pertains to the claims

2 filed as Petitioners' income tax returns. Respondents misstated "You filed your claims

3 more than 3 years after you filed your tax return" in a letter dated December 21, 2011

4 from Respondent Rosalind C. Kochmanski, and in a letter dated August 30, 2012, from

5 Respondent Ann Hagemeyer.  Respondents knew that all of the claims and income tax

6 returns were filed at the same time on the same identical day.  Respondents relied on

7 the following first sentence, as follows:

8   "3 years from the return due date of a timely filed, unextended return,"  when the

9 second sentence is the one that applies to the Petitioners' income tax returns:

10   "3 years from the date we received a late return or timely filed, extended return."

11   The claims and corrected income tax returns were all filed at the same time, and

12 pursuant to the clear reading of the Internal Revenue Code, well within the time period

13 Petitioners are entitled to the relief they seek as a clear and undisputed matter of law.

14 (The corrected/amended returns were submitted only 3-4 months in November 2010

15 after initial filing, and resubmitted to the IRS only a few months later. Upon firm

16 discovery that the IRS shredded the returns bearing original signatures, they were

17 resubmitted with original signatures about one year after the original returns, well within

18 the time period in sentence two above: "three years from the date we receive a late

19 return."

20      <u>ANTI INJUNCTION ACT DOES NOT APPLY</u>

21   The Anti-Injunction Act provides that "no suit for the purpose of restraining the

22 assessment or collection of any tax shall be maintained in any court by any person."[20]

23 *Id.* (omitting exceptions not relevant here). Congress drafted the Anti-Injunction Act "to

24 [20] 26 I.R.C. 7421(a).

<u>ROBERT ROWEN'S AND TERESA SU'S</u>
<u>PETITION FOR A WRIT OF MANDAMUS</u>       PAGE 9 OF 18

11

1    permit the United States to assess and collect taxes alleged to be due without judicial

2    intervention, and to require that the legal right to disputed sums be determined in a suit

3    for refund." [21]   A suit barred by the Anti-Injunction Act "may not be entertained merely

4    because collection would cause an irreparable injury, such as the ruination of the

5    taxpayer's enterprise." *Id.*

6         Courts have created two exceptions to the Anti-Injunction Act. First, the Act does

7    not apply when the government cannot prevail under any circumstances and the plaintiff

8    has shown irreparable harm. [22] Second, the Act does not apply when Congress has not

9    given the plaintiff a legal remedy to challenge the tax's validity. [23]  Petitioners argue that

10   the Act itself does not apply because the mandamus and injunctive relief they seek will

11   not restrain the collection or assessment of any tax.

12        The anti-injunction act does not apply because the Petitioners' Petition for a Writ

13   of Mandamus is not "for the purpose of restraining the assessment or collection of any

14   tax." 26 I.R.C. 7421(a).

15        The Petition for writ of mandamus requests a mandate directed to Respondents

16   to require them to comply with the Internal Revenue Code, to require Respondents to

17   process all of Petitioners' income tax returns and their 1040X casualty loss claim, and

18   for an injunction to prevent the Respondents from intentionally destroying federal

19   income tax returns by shredding them before they have been processed, and to prevent

20   the Respondents from repeatedly misstating the Internal Revenue Code to Petitioners.

21        Although the plain text of the Anti-Injunction Act deprives all courts of jurisdiction

22   over any suit "for the purpose of restraining the assessment or collection of any tax." 26

---

23   [21] *Enochs v. Williams Packing & Navigation Co.* [62-2 USTC ¶9545], 370 U.S. 1, 6 (1962).
     [22] *Roat v. Commissioner* [88-1 USTC ¶9364], 847 F.2d 1379, 1383 (9th Cir. 1988).
24   [23] *South Carolina v. Regan* [84-1 USTC ¶9241], 465 U.S. 367 (1984).

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                                    PAGE 10 OF 18

12

1  I.R.C. 7421(a), the Supreme Court has recognized an exception to this otherwise

2  absolute language: "Only upon proof of the presence of two factors could the literal

3  terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for

4  injunctive relief in any case; and second, certainty of success on the merits."[24] The

5  Petitioner' action is precisely the rare type of suit for which this exception was crafted.

6      In analyzing the "certainty of success" factor, the Court must determine whether

7  "under the most liberal view of the law and the facts, the United States cannot establish

8  its claim," [25]  In this case, the IRS cannot prevail on their claims, because Petitioners'

9  federal income tax forms and casualty loss proves Petitioners are entitled to a refund.

10      As the courts previously noted:

11      Issuance of a writ of mandamus is carefully circumscribed and used "only in

12  extraordinary situations," since it is a "drastic" remedy.[26] Petitioners seeking a writ of

13  mandamus must satisfy the "burden of showing that [his] right to issuance of the writ is

14  'clear and indisputable.'"[27]   The Third Circuit has consistently adhered to this stringent

15  standard. [28]

16

---

17  [24] *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (citing *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 6-7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)); Accord *United States*

18  *v. American Friends Serv. Comm.*, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974); *Commissioner v. "Americans United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).
[25] *Williams Packing,* 370 U.S.at 7, 82 S.Ct. 1125; *see also International Lotto Fund v. Virginia State*

19  *Lottery Dep't,* 20 F.3d 589, 592 n. 3 (4th Cir.1994) (recognizing that Anti-Injunction Act destroys jurisdiction unless it is "clear that the government 'could in no circumstances ultimately prevail on the

20  merits' " *(quoting American Friends,* 419 U.S. at 10, 95 S.Ct. 13)).
[26] *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34 (1980) *(per curiam).*

21  [27] *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384 (1953) *( quoting United States v. Duell,* 172 U.S. 576, 582 (1899).
[28] *See, e.g., PAS v. Travelers Ins. Co.,* 7 F.3d 349, 357 (3d Cir. 1993) *(denying writ of mandamus because it*

22  *was not clear and indisputable that state claims were not preempted by ERISA); Sunbelt Corp. v. Noble, Denton & Associates, Inc.,* 5 F.3d 28 (3d Cir. 1993) *(granting writ because it was clear and indisputable that district court did not have the legal authority to transfer a case to a district where personal*

23  *jurisdiction was lacking); Travellers International AG v. Robinson,* 982 F.2d 96, 98 (3d Cir. 1992), *cert. denied,* 113 S.Ct. 1946 (1993) *(denying writ of mandamus because it was not clear and indisputable that*

24  *petitioner was entitled to jury trial).*

1    Here, the Petitioners have a clear and indisputable right to have the Petition for

2  Writ of Mandamus granted to mandate the Respondents comply with the Internal

3  Revenue Code. Their lack of remedies are circumscribed by the Internal Revenue Code

4  as discussed above. Accordingly, Petitioners are entitled to mandamus relief.

5    The courts recognize that the "extraordinary" remedy of mandamus cannot be

6  used where an "ordinary" appeal would otherwise suffice.[29]  Some courts of appeals

7  have used this principle to deny mandamus where petitioners have failed first to seek

8  permissive interlocutory review under 28 U.S.C. § 1292(b), or to explain why such relief

9  would be inadequate.[30]  But in this case an "ordinary" appeal would not suffice and

10  interlocutory review is not available, and not adequate to provide the relief requested.

11    The Third and Ninth Circuits conclude that the failure to seek interlocutory review

12  under § 1292(b) does not automatically preclude issuance of the writ of mandamus. In

13  Alexander v. Primerica Holdings, Inc.,[31] and In re School Asbestos Litigation,[32]  the

14  Third Circuit held that there should not be any bright-line rule requiring petitioner to seek

15  a § 1292(b) certification, or show good reason why it was not sought, before filing a

16  mandamus petition. As the School Asbestos court explained:

17      We reiterate our preference for an explanation in the petition for why interlocutory
        appeal is not an adequate alternative. Where interlocutory appeal seems a
18      practical but untried avenue, we will ordinarily deny a petition for mandamus. We
        decline, however, to dismiss any of the petitions in this case out of hand for
19      failure to address the availability of interlocutory appeal.[33]

20

21

[29] Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 933 n. 6, 74
22  L.Ed.2d 765 (1983).
    [30] See, e.g., DeMasi v. Weiss, 669 F.2d 114, 118-19 (3d Cir.1982); Rapp v. Van Dusen, 350 F.2d 806, 813
23  (3d Cir.1965); Evans Electrical Constr. Co. v. McManus, 338 F.2d 952, 953 (8th Cir.1964).
    [31] 10 F.3d 155, 163 (3d Cir.1993).
    [32] 977 F.2d 764, 773-74 (3d Cir.1992).
24  [33] 977 F.2d at 774 (citations omitted).

14

1   The court stressed that a "rigid" approach to mandamus relief would be

2   inconsistent with its purposes: "Some flexibility is required if the extraordinary writ is to

3   remain available in extraordinary situations. 'The writ is a safety valve (one of several

4   safety valves, in fact) in the final-judgment rule, and its proper use cannot be wholly

5   reduced to formula.' "[34] Similarly, the Ninth Circuit rejected the application of a strict

6   requirement that petitioner first attempt to obtain § 1292(b) certification, where possible,

7   before seeking mandamus.[35] The court pointed out that such a requirement would be

8   needlessly inflexible and inconsistent with prior practice. Although previous Ninth Circuit

9   decisions might have appeared to require that petitioner first try to obtain § 1292(b)

10   certification, the court explained that these rulings were simply "based on prudential

11   considerations." Id.

12   In circumstances like those in the Petitioners' case, the writ of mandamus lies to

13   require the Respondents to perform a duty owed to the Petitioners the same as it would

14   lie to require a district court to proceed with and determine actions pending before it. [36]

15   Petitioners invoked the Administrative Procedure Act, 5 U.S.C. §§ 704-06; the All

16   Writs Act, 28 U.S.C. § 1651; the Mandamus Act, 28 U.S.C. § 1361.

17   It has long been recognized that courts in the Ninth Circuit have jurisdiction to

18   grant prospective relief requiring governmental officials to obey the law according to Ex

19   parte Young.[37] Today, it is the rule of the Ninth Circuit, under *Presbyterian Church*

20

21
___

[34] Id. at 773 (citing *Maloney v. Plunkett*, 854 F.2d 152, 155 (7th Cir.1988)).

22   [35] See *Executive Software North America, Inc. v. United States Dist. Ct.*, 24 F.3d 1545, 1549-50 (9th Cir.1994).

23   [36] *McClellan v. Carland*, 217 U.S. 268, 280, 30 S.Ct. 501, 54 L.Ed. 762; *In re President and Fellows of Harvard College*, 1 Cir., 149 F.2d 69, 73. See also *LaBuy v. Howes Leather Co., Inc.*, 352 U.S. 249, 260, 77 S.Ct. 309, 1 L.Ed.2d 290.

24   [37] 209 U.S. 123 (1908); *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010).

1  (U.S.A.) v. United States,[38] that the APA effectively adopted *Ex parte Young* as the

2  doctrinal basis for a claim seeking prospective relief and as a federal sovereign

3  immunity waiver. [39]

4          The Ninth Circuit's decision in *Veterans for Common Sense v. Shinseki*[40]

5  resolved any tension between *Gallo Cattle* and *Presbyterian Church*, [41]  holding that as

6  to "claims for 'relief other than money damages,' Section 702 waives sovereign

7  immunity regardless of whether the claims arise from 'agency action' as defined by the

8  APA." [42]

9          The Shinseki court stated:

10          it is Presbyterian Church and not Gallo Cattle that controls where . .
            . a plaintiff's challenge is . . . not dependent on the APA for a cause
11          of action.
            The first and second sentences of § 702 play quite different
12          roles, each one significant. The first sentence entitles aggrieved
            individuals to "judicial review of federal agency action." The
13          second sentence, added to the statute decades later, waived
            sovereign immunity for "[a]n action in a court of the United States
14          seeking relief other than money damages . . . ." One such action, of
            course, is a suit for "judicial review of federal agency action" of the
15          sort authorized by the first sentence. But other actions exist too.
            Injunctions may be sought, for example, to enforce the Constitution
16          itself, courts need no statutory authorization to undertake
            constitutional review. . . .
17          *Gallo Cattle* considered a challenge to an agency order
            denying the plaintiffs . . . interim relief to which the plaintiffs
18          believed themselves entitled by statute and the agency's regulations.
            The plaintiffs sought "judicial review of agency action" not because
19          it was unconstitutional, but because it violated the rules governing
            the agency. . . . [43]

20

---

21  [38] 870 F.2d 518, 526 (9th Cir. 1989).
    [39] *See Peabody Western,* 610 F.3d at 1086 ("[S]ince 1976 federal courts have looked to § 702 of the [APA]
22  to serve the purposes of the Ex parte Young fiction in suits against federal officers.").
    [40] No. 08-16728, 2011 WL 1770944 (9th Cir. May 10, 2011).
23  [41] *In Gros Ventre Tribe v. U.S.,* 469 F.3d 801 (9th Cir. 2006), the Ninth Circuit previously observed that
    there was "no way to distinguish The Presbyterian Church from Gallo Cattle." Id. at 809.
    [42] *Shinseki,* 2011 WL 1770944, at *16.
24  [43] *Id.* at 15 (emphasis added).

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                                          PAGE 14 OF 18

16

1    The *Shinseki* court went on to state that where a plaintiff challenges an agency

2 action "which does not depend on the cause of action found in the first sentence of §

3 702," Section 704's "limitation of that first sentence is thus inapplicable, and the district

4 court's reliance on Gallo Cattle [will be] incorrect." [44]

5    Instead, where plaintiffs bring "'[a]n action in a court of the United States seeking

6 relief other than money damages'" that arises under other federal law, "sovereign

7 immunity has been waived by § 702's second sentence." [45]

8    Under *Shinseki*, which is binding law in this jurisdiction, Section 702 waives

9 sovereign immunity for plaintiffs seeking relief other than money damages against a

10 federal agency when (1) a plaintiff seeks review of a "final agency action" under Section

11 704, or (2) a plaintiff states a claim that would otherwise fall within the purview of federal

12 jurisdiction. [46]

13    Here, both avenues serve as waivers of the United States' sovereign immunity;

14 and both provide Petitioners with actionable claims under federal law. [47]

15    1. The United States' Sovereign Immunity Is Waived Under The First Sentence of

16 The APA's Section 702.

17    The APA grants a cause of action and right of review to any "person suffering

18 legal wrong because of" a "final agency action for which there is no other adequate

19

20

---

21 [44] *Id.* at 16. In other words, under Shinseki "final agency action" is not necessary for jurisdiction, but,
rather, is "a necessary element of a cause of action under the APA." *CareToLive v. Von Eschenbach,* 525
F.Supp.2d 938, 948 (S.D. Ohio 2007).

22 [45] *Sidhu v. Chertoff,* No. 07-1188, 2008 WL 540685, at *5 (E.D. Cal. Feb. 25, 2008) *(quoting Indep.
Mining Co. v. Babbitt,* 105 F.3d 502, 507 n. 6 (9th Cir. 1997)).

23 [46] *See e.g.,* 28 U.S.C. §§ 1331, 1333, 1361-62, 2201-02; 29 U.S.C. § 1132(e).

[47] Respondents might assert that "[i]f a plaintiff fails to identify a final agency action challengeable under
the APA, the action should be dismissed for lack of subject matter jurisdiction." ECF No. 51 at 12. In light

24 of *Shinseki*, this cannot be the case.

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                                    PAGE 15 OF 18

1   remedy in a court . . . ." Where an agency is under an affirmative duty to act, "failure so

2   to act constitutes, in effect, an affirmative act that triggers 'final agency action' review."

3        "The Ninth Circuit has confirmed that inaction involves a non-discretionary act"

4   where "'at some level, the government has a general non-discretionary duty'" to take an

5   affirmative action. [48] "It is [now] undisputed that claims of inaction by an agency are

6   reviewable under the APA . . . ." [49] Federal Respondents' action – and inaction –, was a

7   "final agency action" under the APA. [50]

8        This Court can see the waiver of immunity as explained above, and Petitioners

9   are entitled to the Petition for Writ of Mandamus.

10        In construing a statute, courts generally seek the plain and literal meaning of its

11   language. [51] For that purpose, courts generally assume that Congress uses common

12   words in their popular meaning. [52]

13        In deciding whether the regulation comports with the statute's plain language, the

14   courts look to the ordinary usage or settled meanings of the words used in the statute

15   by Congress. [53] There is a strong presumption that Congress expresses its intention

16   through the language it chooses. [54]

17

18

---

[48] *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987).

[49] *Florida Marine Contractors v. Williams*, No. 03-0229, 2004 WL 964216, at *3 (M.D. Fla. Apr. 22, 2004); *see also Hall v. Norton*, 266 F.3d 696, 975 n. 5 (9th Cir. 2005) (an agency's decision not to consult federal law is itself a "final agency action"); *Natural Resources Defense Council v. Patterson*, 333 F.Supp.2d 906, 916 n.6 (E.D. Cal. 2004) (finding "final agency action" where plaintiffs "point[ed] to specific, albeit repeated, instances in which the government decided not to act, i.e. not to release sufficient water to keep the fish in good condition").

[50] *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

[51] *See United States v. Locke*, 471 U.S. 84, 93, 95-96 (1985); *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543 (1940).

[52] *See Commissioner v. Groetzinger*, 480 U.S. 23, 28 (1987), affg. 771 F.2d 269 (7th Cir. 1985).

[53] *See Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925).

[54] *See INS v. Cardoza- Fonseca*, 480 U.S. 421, 432 n.12 (1987).

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS               PAGE 16 OF 18

18

1    A regulation may not contradict the unambiguous language of a statute. [55]

2   Where the statute's language is plain, the language is where the interpretive task should

3   end, and the sole function of the courts is to enforce such language according to its

4   terms. [56]

5   CONCLUSION

6    In conclusion, the Petitioners would urge the Court to grant their Petition for Writ

7   of Mandamus for the above and foregoing reasons.

8    Respectfully submitted this _9_ day of _November_, 2012.

9

10  TERESA SU, Petitioner      ROBERT ROWEN, Petitioner

11  _Teresa Su_            _Robert Rowen_

Teresa Su, pro se        Robert Rowen, pro se

12

13

14

15

16

17

18

19

20

21

22

---

[55] *See Citizen's Natl. Bank v. United States*, 417 F.2d 675 (5th Cir. 1969); *Hefti v. Commissioner*, 97 T.C.

23  180, 189 (1991), affd. 983 F.2d 868 (8th Cir. 1993).

[56] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *United States v. Merriam*, 263 U.S.

24  179, 187-188 (1923)(stating that tax statutes are not to be extended by implication beyond the clear import
of the language used).

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS              PAGE 17 OF 18

1   Robert Rowen, *pro se*
    321 South Main Street #537
2   Sebastopol, California 95472
    Phone: (707) 328-3012
3

4               UNITED STATES DISTRICT COURT FOR THE
                   NORTHERN DISTRICT OF CALIFORNIA
5

    Robert Rowen and Teresa  Su,          :
6                                          :
                          Petitioners,     :     Case No. 3:12-cv-05831-RS
7                                          :
                     v.                    :
8                                          : MOTION FOR LEAVE TO
    Douglas H. Shulman, Commissioner of    : EXPAND THE RECORD
9   Internal Revenue; Kristen Hoffmeister, : EXHIBITS A, B, C,D,E
    Appeals Officer; Ed Sabrak, Revenue    :
10  Officer; Rosalind C. Kochmanski, Field :
    Director, Accounts Management; Ann     :
11  Hagemeyer, Operations Mgr. ASFR/       :
    Centralized Reconsideration; Ursula    :
12  Dean, Operations Manager; and Teresa   :
    Amper, Settlement Officer,             :
13                                         :
                          Respondents.:
14  _____       :

15      PETITIONERS MOTION FOR LEAVE TO EXPAND THE RECORD

16          Petitioners Rowen and Su respectfully motion the court for leave to expand the

17  record by amending the exhibits to their amended Petition for Writ of Mandamus, to

18  include the exhibits [exhibits A,B,C] presented herein from case number CV mc 14-

19  80086 VC, and a recent second offer to settle Ms. Su's alleged 2002 tax liability which

20  was returned [Exhibit D] from the IRS again explaining the agency was evaluating her

21  return for processing and investigating the IRS's SFR which led to the assessment.

22          Petitioners would state that they have previously introduced irrefutable evidence

23  regarding Ms. Su's 2002 1040 MFS tax return (previously filed as an exhibit), which the

24  ROBERT ROWEN'S AND TERESA SU'S
    MOTION FOR LEAVE TO EXPAND THE RECORD

1   IRS has delayed processing and which delay to process is a cornerstone of the petition.

2   Petitioners have likewise presented to this court documents evidencing that the IRS at

3   long last is investigating Ms. Su's 2002 return for processibility as well as an internal IRS

4   investigation into the IRS's substitute for return on Ms Su for 2002 which omitted 3 key

5   offsets/deductions to income, which the IRS would have had access to through

6   information returns and pubic records: cost basis of a property sold (IRS improperly

7   assessed Ms. Su on the gross sales price), home mortgage deduction and home property

8   tax deduction.

9           The 2002 returns, both MFS and MFJ are presently before this court and the US

10  Tax Court. Despite the active litigation, IRS Revenue Officer David Barbearo apparently

11  conspired with officers of this court, inclusive of the US Attorney to obtain an ex parte

12  order for entry, into Ms. Su's premises and office, under a fraudulent declaration to the

13  USDC NDC, to improperly seize assets belonging to Ms. Su. Federal law (26 USC 6331)

14  as well as the IRM **mandate** that the liability (assessment) **must** be verified prior to

15  seeking an order to seize. The liability was **<u>NOT</u>** verified. Furthermore, Revenue Officer

16  Barbearo and the attorneys sought the order under seal **<u>absent a jeopardy assessment</u>** by

17  the commissioner, preventing Ms. Su (and Mr. Rowen) from access to the courts, without

18  timely notice and opportunity to be heard, at a meaningful time and a meaningful manner,

19  before they invaded the privacy of her personal residence with armed law enforcement

20  officers, and unlawfully searched for, an seized, her own personal property, without her

21  consent, and against her will, while intentionally preventing their right to prevent the

22  intentional violation of their due process rights, all under the sealed court order obtained

23  by perpetrating a fraud on the court by officers of the court.

24  <u>ROBERT ROWEN'S AND TERESA SU'S</u>
    <u>MOTION FOR LEAVE TO EXPAND THE RECORD</u>

1    Additionally, the alleged income tax liability assessed against Robert Rowen, was

2    the fruit of an unlawful double punishment intentionally imposed by the IRS, a division

3    of the Executive Branch of Government, <u>under a specific federal statute</u>, after he had

4    already received a sentence of incarceration and fine under a plea agreement <u>under the</u>

5    <u>same statute</u> by the Court, a division of the Judicial Branch of Government.

6    Thereby, the IRS double assessment created a classic unlawful double jeopardy,

7    in violation of Robert Rowen's constitutional rights against double jeopardy. The IRS

8    knew at the time the double assessment was imposed by the IRS, that it was unlawfully

9    imposed.  The IRS knew at the time they made the application for the sealed ex parte

10   court writ of entry that it was based upon the unlawful double assessment.

11   The record will reflect the IRS has intentionally persecuted Robert Rowen year

12   after year under the unlawfully imposed double assessment that created double jeopardy.

13   The IRS has repeatedly intentionally persecuted Robert Rowen vindictively ever since.

14   Therefore, the double assessment that was imposed against Robert Rowen, that

15   was imposed personally, and against the trust, violated the statute because the IRA knew

16   that Robert Rowen received no gain (required by the statute, and the assessment can only

17   be double the amount of the gain).

18   The IRS knew that the entire income and assets from the trust were embezzled by

19   Frank Avezak, a former Revenue Officer.  The documents from the Recorder's Office in

20   Alaska proved that Frank Avezak embezzled all the assets from the trust himself.

21   Barbearo and the officers of the court, with whom he apparently conspired, knew

22   full well that active ongoing litigation pending in this court and the US Tax Court which

23   would result in a substantial refund, would prevent mandated verification of the liability.

24

<u>ROBERT ROWEN'S AND TERESA SU'S</u>
<u>MOTION FOR LEAVE TO EXPAND THE RECORD</u>

1      Revenue Officer David Barbearo, and those he conspired with, intentionally

2  violated the mandatory requirements that prohibited their application for the sealed ex

3  parte writ of entry at the time they made the application.

4      Additionally, as the exhibits will prove, they intentionally perpetrated a fraud on

5  the court by officers of the court, devised as a scheme to wrongly influence the court in

6  its decisions, undermining the integrity of the court.

7      After they unlawfully obtained the order and they had armed federal officers enter

8  the residence and office and seize property totally belonging to Ms. Su. The IRS has also

9  proceeded to schedule a liquidation of the property, absent a mandated determination of

10  who owns the property, and assigned all proceeds to Mr. Rowen's (unlawfully imposed

11  double assessed) tax liability, even though they knew that Ms. Su and Mr. Rowen have a

12  prenuptial agreement and the California community property laws do not apply to Ms.

13  Su's property.

14      They also knew that Ms. Su could not be held liable for Mr. Rowen's tax liability

15  imposed for the years during the 1990s, years before they ever met and years before their

16  marriage.

17      Furthermore, California community property laws, if they did apply, would have

18  mandated splitting the proceeds equally, a mandate they intentionally ignored. But with

19  the pre-nuptial agreement entered into before the marriage identifying the property,

20  office, and residence as solely belonging to Ms. Su, including, everything acquired by her

21  after their marriage.

22      (Furthermore, the IRS raised the issue of Mr. Rowen's tax liability from the

23  1990's in the seizure case, and Mr. Rowen's review of the case and the law evidences

24

ROBERT ROWEN'S AND TERESA SU'S
MOTION FOR LEAVE TO EXPAND THE RECORD

that he was subjected to double assessment, in violation of the specific statute, and the imposition of the double assessment under the same identical statute, that he had already received a sentence of incarceration and fine from the Court under the same identical statute, created the classic double jeopardy, prohibited by the United States Constitution, which calls into question the unlawfully imposed punishment of liability from the 1990s. [Exhibit E, FOIA request response, is submitted showing IRS destroyed all records relating to the trust].

Petitioners encourage the court to take notice of the documents attached herein which arise from case CV mc 14-80086 VC [Exhibits A,B,C]. Additionally, Ms Su attaches a second attempt at settling with the IRS based on Doubt as to Liability [Exhibit D]. The IRS returned her second offer, AGAIN stating it was reviewing her return for processing as well as conducting an investigation on the IRS prepared SFR. It is evident that Barbearo and others that he has conspired with have not been content to see the legal process played out in this court or in the Tax Court (Docket 31141-12L), but are actively violating laws to break Petitioners into submission. Amongst other requirements prior to seizure, Barbearo and the officers that practice before this court had a legal and moral duty to inform the seizure court that the liability was not verified, that active litigation was pending in this instant court (and the tax court), and not doing so evidences continuing apparent fraud upon Petitioners and the USDC by officers of the court:

> U.S. v. Tweel, 550 F.2d 297, 299-300 (1977) "Silence can only be equated with fraud when there is a legal or moral duty to speak, or when an inquiry left unanswered would be intentionally misleading... We cannot condone this shocking conduct...If that is the case we hope our message is clear. This sort of deception will not be tolerated and if this is routine it should be corrected immediately".

ROBERT ROWEN'S AND TERESA SU'S
MOTION FOR LEAVE TO EXPAND THE RECORD

24

Petitioners would state that this evidences the continuing bad faith, conspiracy, apparent violations of Title 42 §§ 1983 and 1985, and violations of law the IRS continues to perpetrate upon them, inclusive to the point of making the court a party to their unlawful actions.

Petitioners respectfully request the court to grant this motion for leave to expand the record by amending the exhibits to include the exhibits presented herein for the reasons stated above.

Respectfully submitted this 9th day of July 2014.

__Robert Rowen /s/____     __Teresa Su /s/____

Robert Rowen, pro se        Teresa Su, pro se

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon the appropriate parties by serving a copy thereof by email to the parties at the addresses below:

"Cynthia (USACAN) Stier" <Cynthia.Stier@usdoj.gov>

Assistant United States Attorney
11th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102

on this 9th day of _July_, 2014.

Signed:  _Robert Rowen  /s/_

ROBERT ROWEN'S AND TERESA SU'S
MOTION FOR LEAVE TO EXPAND THE RECORD

1   Robert Rowen, *pro se*
   321 South Main Street #537
2   Sebastapol, California 95472
   Phone: (707) 328-3012
3

4           UNITED STATES DISTRICT COURT FOR THE
             NORTHERN DISTRICT OF CALIFORNIA
5

6   Robert Rowen and Teresa  Su,     :
                          :
                Petitioners,   :   Case No. 3:12-cv-05831-RS
7                          :
                  v.          :
8                          :   (THIRD) MOTION FOR LEAVE TO
   Douglas H. Shulman, Commissioner of :  EXPAND THE RECORD
9   Internal Revenue; Kristen Hoffmeister, :  EXHIBITS
   Appeals Officer; Ed Sabrak, Revenue
10  Officer; Rosalind C. Kochmanski, Field :
   Director, Accounts Management; Ann   :
11  Hagemeyer, Operations Mgr. ASFR/   :
   Centralized Reconsideration; Ursula    :
12  Dean, Operations Manager; and Teresa :
   Amper, Settlement Officer,         :
13                          :
               Respondents.:
14  _____ :

15     PETITIONERS [THIRD] MOTION FOR LEAVE TO EXPAND THE RECORD

16        Petitioners Rowen and Su respectfully motion the court for leave to expand the

17  record by adding the attached exhibits regarding  current USDC NDC case number CV

18  mc 14-80086 VC. Petitioners herein present irrefutable evidence of continuing unlawful

19  activities by the IRS, inclusive of one Revenue Officer David Barbearo and others,

20  inclusive of officers of this court.

21        Said officers/employees of the IRS, as well as officers of this court, have taken

22  unlawful advantage of the temporal needs of the legal process in this court case (amended

23  motion for Mandamus has been in the court for a year), in the US Tax Court case, and

24

ROBERT ROWEN'S AND TERESA SU'S
MOTION FOR LEAVE TO EXPAND THE RECORD

1   within the IRS administrative process itself, to perpetrate a fraud upon the USDC, by

2   officers of the court, in case mc-14-90096 by illegally seeking and obtaining an ex parte

3   order to enter into and upon the private property of Teresa Su, and conduct an unlawful

4   search and seizure, absent the MANDATED required federal prerequisites, inclusive of

5   informing said court of the presence of this case before the Honorable Judge Seeborg,

6   which has material bearing on any tax debt allegedly owed by Ms. Su. The IRS obtained

7   an ex parte order to enter into and upon the private property of Teresa Su, and conduct an

8   unlawful search and seizure, and seize personal assets belonging to Ms. Su, within Ms.

9   Su's undisputed residence, her undisputed office, and even seized assets outside the

10  parameters of the order, and then, in abject violation of California community property

11  laws and California statutes regarding pre-nuptial agreements, the IRS has scheduled a

12  liquidation sale of Ms. Su's personal assets applying all of the seizure to the alleged debts

13  of a third party – Mr. Rowen, (previous to marriage) which debt itself is now in question

14  due to an involvement in imposing the tax judgment against him in violation of double

15  jeopardy.

16          Petitioners respectfully present the additional information to this court  as

17  evidence of a continuing vendetta/conspiracy/federal law violations regarding both Mr.

18  Rowen and Ms. Su and unlawful persecution of Ms. Su for the alleged previous debts of

19  Mr. Rowen, and the overt deliberate actions of the IRS to subvert/void/violate California

20  property laws to accomplish its ends. The IRS conspirators have chosen NOT to allow

21  this honorable court to work through the legal process, nor the tax court, nor the IRS

22  processing office itself, before perpetrating a fraud upon another judge in this USDC, by

23  officers of the court, obtaining an ex parte order to enter into and upon the private

24
ROBERT ROWEN'S AND TERESA SU'S
MOTION FOR LEAVE TO EXPAND THE RECORD

27

property occupied by Ms. Su, and unlawfully seized Ms. Su's personal property and yet further unlawfully apply her assets to the prior alleged debts of Mr. Rowen in violation of the prenuptial agreement, and the California Community Property Laws.

Petitioners would state that this is additional evidence of the continuing bad faith, conspiracy, apparent violations of Title 42 §§ 1983 and 1985, and violations of law the IRS continues to perpetrate upon them, inclusive to the point of making the court a party to their unlawful actions and intentionally inflicting suffering upon Petitioner Su under color of law.

Petitioners respectfully request the court to grant this motion for leave to expand the record by amending the exhibits to include the exhibits presented herein for the reasons stated above.

Respectfully submitted this 25th day of July 2014.


   Robert Rowen /s/          Teresa Su /s/

Robert Rowen, pro se        Teresa Su, pro se

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ROBERT ROWEN, et al.,                    Case No.  12-cv-05831-RS

8              Plaintiffs,

9         v.                                  **ORDER GRANTING MOTION TO
                                              DISMISS**
10   DOUGLAS H. SHULMAN, et al.,

11             Defendants.

12

13        Robert Rowen and Teresa Su initiated this matter as a "petition for writ of mandamus,"

14   seeking an order compelling the Internal Revenue Service ("IRS") to "comply with the Internal

15   Revenue Code."  Although the outer boundaries of petitioners' claims are less than clear, the

16   gravamen of their complaint is that the IRS allegedly has refused to accept and process as timely

17   certain amended tax returns they have submitted.   Also in dispute is petitioners' right to claim a

18   casualty loss.  Ultimately it seems to be petitioners' position that if their amended tax returns were

19   processed and accepted as filed by the IRS, they would have a substantial refund and additional

20   losses that could be applied to offset subsequent tax liabilities.  In subsequent filings, petitioners

21   complain that the IRS is engaged in wrongful collection activities against them, as a result of the

22   failure to process the amended returns.

23        By prior order, the original petition for mandamus was dismissed, on grounds that the

24   allegations, and the arguments presented by petitioners in opposition to dismissal, demonstrated

25   that their fundamental dispute with the IRS involves disagreements about how the law is to be

26   interpreted and applied, not a failure to perform purely ministerial duties.  Petitioners were granted

27   leave to amend.  While they were not precluded from continuing to seek relief by way of

28

United States District Court
Northern District of California

mandamus, they were encouraged to give careful consideration to whether the relief they seek

would be more appropriately presented in an ordinary civil action against the government.

In their amended pleading[1] and subsequent briefing, petitioners have elected to continue

seeking solely a mandamus remedy.  Petitioners have also filed three separate "motions to expand

the record," each of which includes additional arguments and exhibits that petitioners seek to have

considered.  Those motions are granted, and the additional material has been considered.

Nothing in the amended petition or the additional material, however, addresses or cures the

previously identified deficiency that the relief sought cannot properly be characterized as a

ministerial act.  Petitioners steadfastly deny that they intend to pursue this matter as a refund suit

or other ordinary complaint.  Accordingly, defendants' motion to dismiss must be granted, and

there is no basis for providing further leave to amend.


**IT IS SO ORDERED**.


Dated:  9/30/14

RICHARD SEEBORG
United States District Judge

---

[1]   Petitioner's amended petition was also presented as a motion for reconsideration.  While the motion for reconsideration was denied by prior order, that pleading  (Dkt. No. 43) stands as the operative petition for mandamus.  See Order dated August 30, 2013 (Dkt. No. 57).

ORDER GRANTING MOTION TO DISMISS
CASE NO.  12-cv-05831-RS

30

1  TAMARA W. ASHFORD
   Acting Assistant Attorney General
2
   GOUD P. MARAGANI (DCBN 989904)
3  Trial Attorney
   United States Department of Justice, Tax Division
4  P.O. Box 683, Ben Franklin Station
   Washington, D.C. 20044
5  Telephone: (202) 616-2904
   Fax: (202) 307-0054
6  E-mail: goud.p.maragani@usdoj.gov
   *Counsel for Defendants*
7

8              IN THE UNITED STATES DISTRICT COURT FOR THE
                    NORTHERN DISTRICT OF CALIFORNIA
9

10 TERESA SU,                              )
                                           )   Civil Action No.
11         Plaintiff,,                     )
                                           )   UNITED STATES' NOTICE OF
12         v.                              )   REMOVAL
                                           )
13 MELINDA HAAG, United States Attorney,   )   (Removed from Superior Court of
   MICHAEL PITTMAN, Assistant United       )   California, Sonoma County)
14 States Attorney,                        )
                                           )
15         Defendants.                     )
   _____)
16

17        TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

18 NORTHERN DISTRICT OF CALIFORNIA:

19        The United States of America ("United States"), by and through its undersigned counsel,

20 hereby files this notice to remove this matter to the United States District Court for the Northern

21 District of California under 28 U.S.C. §§ 1441, 1442(a)(1) and 1444. The grounds for removal

22 are as follows:

23        1.      On July 29, 2014, the pro se plaintiff filed, in the Superior Court of California

   (Sonoma County), this matter against Melinda Haag, the United States Attorney for the Northern

                                      1                    Notice of Removal

31

1  District of California, and Michael Pittman, an Assistant United States Attorney in the U.S.

2  Attorney's Office for the Northern District of California. Plaintiff also named the State of

3  California and Kamala Harris, the Attorney General of California, as real parties in interest.

4      2.    On July 29, 2014, the United States Attorney for the Northern District of

5  California received copies of five documents filed by the plaintiff in the state court matter,

6  including the summons, civil cover sheet, and a document titled: "This is an Expedited

7  Emergency Petition for the State of California to Act in the Capacity of Ex Rel by Invoking the

8  Attorney General to Immediately Intervene in the Federal Seizure of Petitioner's Private

9  Property, that was Secured to the Petitioner Under a Prenuptial Agreement and the Community

10  Property Laws of this State, that the Seizure of which were by Federal Employees for the

11  Purpose of Applying the Seized Property to Debt of a Third Party Taxpayer." *See* Exhibits 1 and

12  5.

13      3.    This action may be removed pursuant to 28 U.S.C. § 1441 because the Court has

14  original jurisdiction over this matter pursuant to 26 U.S.C. § 7402(a) as it involves a challenge to

15  a related action (*infra*, Paragraph 6) to levy plaintiff's property to collect on her outstanding tax

16  liability. Furthermore, this Court has original jurisdiction over this lawsuit because it is a "civil

17  action against the United States for the recovery of any internal-revenue tax alleged to have been

18  erroneously or illegally assessed or collected . . . or any sum alleged to have been excessive or in

19  any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. 1346(a)(1). In

20  addition, this action may be removed pursuant to 28 U.S.C. § 1442(a)(1) because it is a civil

21  action commenced in a state court against two officers of the United States in their official

22  capacities based on their efforts (*infra*, paragraph 6) to levy plaintiff's property to collect her

23  outstanding tax liabilities. This action can also be removed under 28 U.S.C. § 1444 because

32

1  plaintiff seeks to quiet title to property, pursuant to 28 U.S.C. § 2410, that is the subject of the

2  related tax collection case cited in paragraph 6, below.

3     4.     In accordance with 28 U.S.C. § 1446(a), attached as Exhibits 1 through 5 are all

4  pleadings, motions, orders and other papers filed in this case in the Superior Court of California,

5  Sonoma County.

6     5.     By filing this notice, the United States does not waive any defenses listed in

7  Fed. R. Civ. P. 12.

8     6.     This action is related to *In the Matter of the Tax Indebtedness of: Robert, et al.*,

9  Case No. 14-mc-80086-VC (USDC N.D. Calif.).

10     WHEREFORE, notice is given that the above-captioned action now pending in the

11  Superior Court of California for Sonoma County, 2014 SCV 255827, has been removed to this

12  Honorable Court.

13                                        Respectfully submitted,

14                                        TAMARA W. ASHFORD
                                          Acting Assistant Attorney General

15

16                                        */s/ Goud P. Maragani*
17                                        GOUD P. MARAGANI
                                          Trial Attorney, Tax Division
18                                        U.S. Department of Justice

19

20

21

22

23

                         3                    Notice of Removal

**33**

Teresa Su, In Pro Per
321 S. Main St. #537
Sebastopol, CA 95472
Phone: 707-328-3012

ENDORSED
FILED

JUL 29 2014

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ~~SACRAMENTO~~ Sonoma

Teresa Su
        Petitioner,

STATE OF CALIFORNIA
        Real Party In Interest,

KAMALA HARRIS Real Party in Interest
        Attorney General of the
        State of California

        vs.

MELINDA HAAG,
        United States Attorney,
        Respondent,

MICHAEWL PITIVMAN
        Assistant United States Atty
        Tax Division,
        Respondent.

UNLIMITED CIVIL
CASE No: SCV        255827

THIS IS AN EXPEDITED EMERGENCY
PETITION FOR THE STATE OF CALIFORNIA
TO ACT IN THE CAPACITY OF EX REL
BY INVOKING THE ATTORNEY
GENERAL TO IMMEDIATELY INTERVENE
IN THE FEDERAL SEIZURE OF PETI-
TIONER'S PRIVATE PROPERTY, THAT WAS
SECURED TO THE PETITIONER UNDER A
PRENUPTIAL AGREEMENT AND THE
COMMUNITY PROPERTY LAWS OF THIS
STATE, THAT THE SEIZURE OF WHICH
WERE BY FEDERAL EMPLOYEES FOR THE
FOR THE PURPOSE OF APPLYING THE
SEIZED PROPERTY TO DEBT OF A THIRD
PARTY TAXPAYER.

FED. CASE NO.: 14-mc-80086-VC and Ninth
Circuit Case _____
MEMORANDUM OF PTS AND AUTH.

COMES NOW Petitioner Teri Su, In Pro Per, a resident of Sebastopol, California,

seeking protection by the State of California from Federal violation of state laws, and alleges as

follows:

/////////////////////////

VENUE

34

1  Teresa Su, In Pro Per
   321 S. Main St. #537
2  Sebastopol, CA 95472
   Phone: 707-328-3012
3

4

5

6

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
                           FOR THE COUNTY OF SACRAMENTO
8

9  Teri Su                              /  CASE No: _____
                Petitioner,             /
10                                      /
                                        /  THIS IS AN EXPEDITED EMERGENCY
11 STATE OF CALIFORNIA                  /  PETITION FOR THE STATE OF CALIFORNIA
                Real Party In Interest, /  TO ACT IN THE CAPACITY OF EX REL
12                                      /  BY INVOKING THE ATTORNEY
   KAMALA HARRIS                        /  GENERAL TO IMMEDIATELY INTERVENE
13              Attorney General of the /  IN THE FEDERAL SEIZURE OF PETI-
                State of California      /  TIONER'S PRIVATE PROPERTY, THAT WAS
14         vs.                          /  SECURED TO THE PETITIONER UNDER A
                                        /  PRENUPTIAL AGREEMENT AND THE
15                                      /  COMMUNITY PROPERTY LAWS OF THIS
   MELINDA HAAG,                        /  STATE, THAT THE SEIZURE OF WHICH
16              United States Attorney, /  WERE BY FEDERAL EMPLOYEES FOR THE
                Respondent,             /  FOR THE PURPOSE OF APPLYING THE
17                                      /  SEIZED PROPERTY TO DEBT OF A THIRD
   MICHAEWL PITIVMAN                    /  PARTY TAXPAYER.
18              Assistant United States Atty /
                Tax Division,           /  FED. CASE NO.: 14-mc-80086-VC and Ninth
19              Respondent.             /  Circuit Case _____
                                        /  MEMORANDUM OF PTS AND AUTH.
20 _____     /
21

22      COMES NOW Petitioner Teri Su, In Pro Per, a resident of Sebastopol, California,

23 seeking protection by the State of California from Federal violation of state laws, and alleges as

24 follows:

25 ///////////////////////

26

27

28                              **VENUE**

                                                                              1

1. Venue is proper in the Superior Court because a seizure of the petitioner's property (appox. $700,000.00) by federal employees within the State of California was in violation of petitioner's State and Federal Civil Rights, due process, privacy rights, a premarital agreement, and community property rights protected by the State of California.

## JURISDICTION

2. This Court has subject matter jurisdiction over this action because the causes of action herein alleged arise under the Family Law Codes 1500-1620 "Premarital Agreement" and Family Law Codes 760-853 "Community Property." Jurisdiction is further acquired under CAL. CONST., ART. V, SEC. 13. *"Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, **it shall be the duty of the Attorney General to prosecute any violations of law** of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney."*

## WHAT THIS PETITION IS NOT

3. This petition is not for the purpose to forestall any tax debt owing to the federal jurisdiction, nor is it to arrest any in process federal procedure that is not in conflict with this state's law, nor is it for the purpose of the State of California to defend the petitioner in any alleged or actual tax liabilities of the petitioner. In addition, this petition does not concern itself with the validity nor invalidity of the federal taxing system. Further, this petition is not for a determination of the guilt or innocence of the petitioner as it concerns the federal taxing jurisdiction.

2

**WHAT THIS PETITION IS FOR**

4.  The sole purpose of this petition is to have the laws as they pertain to community property, due process, privacy, and prenuptial agreements, of the State of California, County of Sonoma enforced as they are the property rights and the State and Federal Civil Rights of the petitioner, which the State's Constitution mandates (Cal. Const., Art. V, § 13) "...they shall be uniformly enforced and to prosecute any violation of these laws, so that order is preserved and the public interests protected."

**HISTORY**

On August 28, 2001 the petitioner entered a private contract known as the Premarital Agreement with Robert Rowen. *See* EXHIBIT "A" Pre-marital Agreement between petitioner and Rowen. *A page listing additional personal property (inclusive of assets seized and more) has been removed which would violate the petitioner's privacy.* The majority of the property within the premarital agreement belongs to the petitioner. The amount stated as being taken in the seizure amounts to approximately $700,000 at fair market value.

The pivotal issue between the Internal Revenue Service and the petitioner concerns itself with the year 2002. On April 11, 2005, the IRS assessed the petitioner with taxes amounting to $145,304 plus interest and penalties. The IRS assessment included gross sales of a property without a cost basis.  On the 1040 form for the year 2002, which was filed by the petitioner in 2010, the tax balance owing to the federal government by the petitioner was $55,402.61 (which was paid in full). *See* EXHIBIT 'B' — Petitioner's 2002, 1040 Income Tax Return. Notwithstanding the receipt of the monies paid, the Internal Revenue Service has not processed the 2002 return, though all of the years between 2003 and 2009 have been processed.  On November 13, 2012, a writ of mandamus was filed into the United States District Court,

37

Northern District of California, the purpose of which was to compel the Internal Revenue Service to process the 2002 return, amongst other returns.  On November 7, 2013 the petitioner received from the Department of the Treasury a letter stating, "other investigations are pending that may affect the liability sought to be compromised or grounds upon which it was submitted." *See* EXHIBIT, 'C' — November 7, 2013 letter signed by Liz Defoto of the Department of the Treasury.  In the petitioner's writ of mandamus, the petitioner disputes the amount of the tax and demands that the IRS process the 2002 return. To date the return has not been processed, and the case remains active in the District Court.

The petitioner relied on the internal revenue manual, which clearly states, "If the taxpayer claims the assessment is incorrect or has additional information that could impact the balance due, the case should be thoroughly investigated and the issue resolved prior to proceeding with enforcement actions." The petitioner has relied upon the below code and in addition information expressed on the US Tax Court Website below, "Must I pay the amount of tax…." On July 11, 2014, the petitioner received a letter from the Internal Revenue Service (See EXHIBIT "D" — "No verification of sole\separate ownership of assets levied".  This letter rejected the petitioner's prenuptial because it was not notarized in spite of the law within the State of California, which does not require requiring that the signatures must be notarized in a private contract. It also disregarded and did not address the community property rights of the petitioner that was pled in several letters to the Internal Revenue Service. The Petitioner has exhausted all her administrative remedies within the Internal Revenue Service and the Federal Court to protect her property rights which will be violated with the imminent liquidation of her assets.

### Internal Revenue Manual 5.10.1.3.1 (12-13-2005
Verifying the Liability

2. If the taxpayer claims the assessment is incorrect or has additional information that could impact the balance due, the case should be thoroughly investigated and the issue resolved prior to proceeding with enforcement action. The case history should be documented to reflect any concerns raised by the taxpayer and the steps taken to address them. If the liability is the result of an SFR assessment, the revenue officer should allow the taxpayer 30 days to prepare corrected returns.

### Must I pay the amount of tax that the IRS says I owe while my case is pending in the Tax Court?

"No, you do not usually need to pay the amount in dispute while your case is pending before the Tax Court. If the Tax Court ultimately concludes, however, that you owe some amount of tax, or if you settle or agree to an amount of tax liability, the law provides generally that interest runs on any unpaid tax from the date it was originally due until paid in full. Interest also runs on some penalties. Although you do not need to pay the amount in dispute while your case is pending in the Tax Court, you may do so if you want to stop the interest on the unpaid tax from accruing.

The rules regarding prepayment of tax and penalties differ in U.S. District Courts and the U.S. Court of Federal Claims. This guide does not provide information about the rules or procedures of those courts."[1]

The petitioner has relied on the information above expecting that the enforcement of any

collection would be forestalled until a determination from the District Court on her Writ of

Mandamus.

Further, the petitioner relied on 26 USC 6331 which states:

26 USC 6331

(j) No levy before investigation of status of property
(1) In general
For purposes of applying the provisions of this subchapter, no levy may be made on any property or right to property which is to be sold under section 6335 until a thorough investigation of the status of such property has been completed.
(2) Elements in investigation
For purposes of paragraph (1), an investigation of the status of any property shall include—

---

[1] US Tax Court Website - https://www.ustaxcourt.gov/taxpayer_info_start.htm#START26

(A) a **verification** of the taxpayer's liability; [emphasis added]
(B) the completion of an analysis under subsection (f);
(C) the determination that the equity in such property is sufficient to yield net proceeds from the sale of such property to apply to such liability; and
(D) a thorough consideration of alternative collection methods.

To date, there has not been a thorough investigation of the status of the petitioner's Property, nor has there been a verification of the taxpayers liability, there being a dispute under a Writ of Mandamus active in the District Court, and a petition in the U.S. Tax Court. The IRS has not denied in District Court pleadings that the required verification was never made.

## VIOLATION OF STATE LAW

The result of the seizure is evidenced in EXHIBIT "E" — Public Auction dated July 31, 2014. The entire property seized within the petitioner's residence will be applied to a third-party, Robert Rowen. In spite of there being a Premarital Agreement and that the State of California is a community property state, none of the property's fair market value resulting from the auction will be applied to the petitioner. This is a violation of the petitioner's civil rights both federal and state. It is also a violation of the petitioner's due process rights. It also violates the community property laws of the state of California and the laws of California concerning Premarital Agreements.

**COMMENT**: The petitioner is now alleged to owe penalties and interest besides the original principle of the tax debt amounting to the sum of over $200,000. The property seized is estimated to be worth $700,000. Even if there was not a prenuptial agreement, the community property laws of the State of California would apply. Thus, $350,000 would have to apply to the alleged tax liability of the petitioner, which would leave an excess of $150,000. In this matter, all of the $700,000 will be applied to the third-party's tax liability, Robert Rowen, which violates the community property laws of this state.

1        Thus, the petitioner invokes the aid of the State of California to protect

2    her property rights and due process rights as guaranteed within the Constitution of both the State

3    of California and the Federal Constitution.

4

5                                   **RELIEF SOUGHT**

6    1) Invoking the State of California to immediately petition the seizure court to enter

7    the case as the State of California EX REL to protect the privacy and private property rights of

8
9    the petitioner, which rights are protected by the State of California, and which were violated by

10   federal employees.

11   2) Invoking the State of California to immediately petition the United States District Court

12   Northern District of California for an emergency order to seize the unlawfully obtained assets of

13   the petitioner.
14
15   3) Invoking the authority of the State of California to take custody of the seized property until

16   such time of a resolution between the Internal Revenue Service and the Petitioner.

17

18

19

20

21

22

23

24

25

26

27

28

7

41

## VERIFICATION

I, the undersigned, declare that I have read the foregoing " This is an expedited emergency petition for the state of California to act in the capacity of ex-rel by invoking the attorney general to immediately intervene in the federal seizure of petitioner's private property, that was secured to the petitioner under a prenuptial agreement and the community property laws of this state, that the seizure of which were by federal employees for the purpose of applying the seized property to the debt of the third-party taxpayer."

This verification is executed by the petitioner, Teri Su, because I am the most knowledgeable regarding the facts relative to the issues in this matter.

I have read the foregoing expedited emergency petition and know the contents thereof; the same is true of my own knowledge, except as to matters which are the therein stated upon information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on: _July 29_ at _Santa Rosa_, California.

_Teri Su_

## MEMORANDUM OF POINTS AND AUTHORITIES

42

I. THE LAWS OF THE STATE OF CALIFORNIA CONCERNING PREMARITAL AGREEMENTS UNDER THE UNIFORM PREMARITAL AGREEMENT ACT. THE PETITIONER'S PREMARITAL AGREEMENT FALLS WITHIN THIS LAW IN THAT THE AGREEMENT INCORPORATES BOTH PARTIES SIGNATURES WHICH HAVE BEEN WITNESSED, BUT HAVE NOT BEEN NOTARIZED. THE LAW IS SPECIFIC, THE AGREEMENT MERELY NEEDS BOTH PARTIES SIGNATURES. *See* EXHIBIT "A" — Premarital Agreement

FAMILY.CODE SECTION 1611

"A premarital agreement shall be in writing and signed by both parties. It is enforceable without consideration."

II. THE FEDERAL EMPLOYEES, WHO ISSUED THE CERTIFIED LETTER (*SEE* EXHIBIT "E") VIOLATED THE LAW OF THIS STATE BY REJECTING THE PREMARITAL AGREEMENT BECAUSE IT WAS NOT NOTARIZED. THE LAW DOES NOT REQUIRE THE AGREEMENT TO BE NOTARIZED BUT DOES REQUIRE THE SIGNATURES OF BOTH PARTIES.

See FAMILY.CODE SECTION 1611 above.

III. THE PETITIONER IS A MARRIED WOMAN UNDER THE LAWS OF THE STATE OF CALIFORNIA. ALL PROPERTY REAL OR PERSONAL DURING THE MARRIAGE WHILE DOMICILED IN THE STATE OF CALIFORNIA IS COMMUNITY PROPERTY. THE FEDERAL EMPLOYEES REFUSED TO APPLY THE COMMUNITY PROPERTY LAWS OF THE STATE TO THE SEIZED PERSONAL PROPERTY OF THE PETITIONER. THE SEIZED PROPERTY WILL BE APPLIED TO A THIRD-PARTY'S TAX LIABILITY, AND NONE WILL BE APPLIED TO ANY ALLEGED OR ACTUAL TAX LIABILITY OF THE PETITIONER.

FAMILY.CODE § 760—761

"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

Respectfully submitted,

Dated: _July 29, 2014_        _Teresa Su_
Teresa Su/Petitioner/Pro Per

43

1  TAMARA W. ASHFORD
   Acting Assistant Attorney General
2
   GOUD P. MARAGANI (DCBN 989904)
3  Trial Attorney
   United States Department of Justice, Tax Division
4  P.O. Box 683, Ben Franklin Station
   Washington, D.C. 20044
5  Telephone: (202) 616-2904
   Fax: (202) 307-0054
6  E-mail: goud.p.maragani@usdoj.gov
   *Counsel for Defendants*
7
8              IN THE UNITED STATES DISTRICT COURT FOR THE
                    NORTHERN DISTRICT OF CALIFORNIA
9
10 TERESA SU,                          )
                                       )
11         Plaintiff,                  )      Civil Action No. 3:14-cv-03540
                                       )
12         v.                          )
                                       )
13 MELINDA HAAG, United States Attorney,)      [proposed] ORDER
   MICHAEL PITTMAN, Assistant United   )
14 States Attorney,                    )
                                       )
15         Defendants.                 )
   _____)
16
17         After careful consideration of the Stipulation to Dismiss Melinda Haag, Michael Pittman

18 and the United States filed by the plaintiff and the United States, IT IS HEREBY ORDERED

19 that:

20         1.     Melinda Haag (the United States Attorney for the Northern District of California)

21 and Michael Pittman (an Assistant United States Attorney) are dismissed, in both their official

22 and personal capacities, from this case with prejudice;

23         2.     the United States is dismissed from this case with prejudice; and

                                          1

44

3.     this case is remanded to the Superior Court of California (Sonoma County) for
further proceedings.

DATED this ___3rd___ day of ___September___, 2014.



_____
UNITED STATES _____ JUDGE

IT IS SO ORDERED

Judge Vince Chhabria

45