MARC X. CARLOS, ESQ.
State Bar Number: 132987
**MARC CARLOS LAW, APC**
424 F Street, Suite 205
San Diego, CA 92101
Telephone: (619) 702-3226
Facsimile: (619) 702-5415

Attorney for Defendant
**ROBERT ROWEN**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**(HONORABLE CHARLES R. BREYER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 19CR486-CRB |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| ROBERT ROWEN, | Date: January 26, 2022<br>Time: 1:30 P.M. |
| Defendant. | |

**TO: DAVID L. ANDERSON, UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA; YOOSUN KOH, ASSISTANT UNITED STATES ATTORNEY; AND CATHERYN GRIER, UNITED STATES PROBATION OFFICER:**

Defendant, ROBERT ROWEN, by and through his counsel, Marc X. Carlos, hereby files the following Defendant's Sentencing Memorandum.

///

///

# I.
# **INTRODUCTION**

On October 15, 2021, Defendant ROBERT ROWEN (hereinafter referred to as Dr. ROWEN) pled guilty to one count of 28 U.S.C. § 7201, Tax Evasion. Dr. ROWEN's sentencing hearing is currently scheduled for January 26, 2022, at 1:30 p.m..

Under the holding of United States v. Booker, 543 U.S. 220 (2005), the United States Sentencing Guidelines are considered advisory.  Booker requires sentencing courts to consider, in addition to the Guidelines themselves, the broad directives set forth in 18 U.S.C. § 3553(a).  These authorities make it clear that courts may no longer conduct mechanical "sentencing by numbers" or rely on the Guidelines as a crutch to avoid having to make difficult decisions at sentencing.  Rather, under Booker, courts must treat the Guidelines as merely one factor amongst many in consideration of sentencing.  As will be discussed below, Booker now permits a sentencing court to apply its own discretion at sentencing and consider even those factors of which the Guidelines previously precluded consideration.  Moreover, in Gall v. United States, 552 U.S. 38 (2007), and Kimborough v. United States, 552 U.S. 85 (2007), the Supreme Court emphasized that federal trial courts have wide latitude to sentence as they see fit, even if those sentences are considerably lower than those recommended under the Guidelines.

Therefore, this court has discretion to determine the terms of Dr. ROWEN'S sentence without regards to a mandatory sentencing scheme and to consider his individual circumstances in favor of a fair and reasonable sentence.

## II.
## STATEMENT OF FACTS

Dr. ROWEN adopts the factual basis recited in the plea agreement that he entered into on March 14, 2019.  Additionally, Dr. ROWEN adopts the facts that he reported to USPO Grier during his presentence interview, as recounted in the Presentence Investigation Report (hereinafter referred to as the "PSR").   Dr. ROWEN further requests that this Court take into consideration all existing mitigating factors at the time of his sentencing.

## III.
## ARGUMENT

**A.  INDIVIDUAL BEFORE THE COURT**

Dr. ROBERT ROWEN, M.D., is 72 years old and a United States Citizen.  He was born and raised in Wilmington, Delaware.  He has three siblings- Sherry Rowen, a medical doctor living in Orange County, Allen Rowen, retired and living in San Diego, CA, and Lisa Rowen, a nurse residing in Baltimore, Maryland.  Dr. ROWEN remains very close to his siblings, and they visit each other regularly.  Of particular note is that his brother, Allen Rowen, secured the cash bond in the instant case.

///

Dr. ROWEN has excelled in his academic and professional endeavors. Dr. ROWEN received a Bachelor of Science degree from Johns Hopkins University in Baltimore, Maryland, in 1971. Dr. ROWEN received his medical degree from the University of California, San Francisco, School of Medicine in 1975. Dr. ROWEN is board certified in Family Practice and Emergency Medicine.

Dr. ROWEN was previously married and has three successful children. Ian Rowen (age 42) is an associate professor at Nanyang Technological University in Singapore. Tammy is an obstetrician/gynecologist and associate professor at the University of California, San Francisco, School of Medicine. Jamie is an associate professor at the University of Massachusetts, in Amherst. All of his children are close and support Dr. ROWEN. Dr. ROWEN has been married to Dr. Teri Su, M.D. since 2001.

Dr. ROWEN became a medical doctor to help others. To that end, after medical school, Dr. ROWEN served as a commissioned general medical officer in the U.S. Public Health Services in Anchorage, Alaska, from 1979 to 1983. As a medical officer his duties included service to underserved communities. During the last few years of that service, Dr. ROWEN began to feel uneasy about treating ailments with prescription medication. He began to feel the western/establishment model of health care and medical treatment to be incompatible with his own research and beliefs. For that reason, Dr. ROWEN shifted away from traditional medicine to

a holistic/alternative practice in 1983.  From 1983 to 2001, Dr. ROWEN owned and operated Omni Medical Center in Anchorage, Alaska.  His practice included holistic medicine and holistic treatment.  Dr. ROWEN served thousands of patients who came to rely on his expertise and services.  In 2001, Dr. ROWEN moved back to California and joined the Radiant Health Medical Center.  Radiant Health Center was an established practice owned and operated by his wife, Dr. Teri Su, M.D..  In 2014, the business changed its name to the Rowen-Su Medical Clinic.  Since 2001, Dr(s). ROWEN and Su have served several thousand patients without complaints.

Dr. ROWEN's specialty in alternative medicine is in Ozone Therapy.  This therapy treats patients by oxygenating blood with a combination of oxygen (O2) and ozone (O3).  It is well established that oxygen is the underlying source of healing. Ozone Therapy enhances the body's natural healing mechanism.  Dr. ROWEN is an internationally recognized expert in Ozone Therapy and alternative medicine.  He is a sought out lecturer/presenter (see list of speaking engagements attached as Exhibit A) and has submitted several publications (a sample are attached as Exhibit B).

At present, the Rowen-Su Medical Clinic carries over 1800 active medical files and hundreds of patients.  Dr(s). Sue and ROWEN treat patients for various ailments including pain management, chronic fatigue, Lyme Disease, Arthritis, Auto-Immune Diseases and alternative support for cancer patients. The clinic has six full time employees and two part time employees.  Dr. ROWEN supervises five

registered nurses and three certified medical assistants.  These employees depend on wages and salaries provided by the clinic as do the fifteen minor dependents of those employees.

At 72 years old, Dr. ROWEN has led a productive and relatively crime free adult life.  His sole criminal conviction was for a felony tax evading charge in 1997, over twenty five years ago.  Aside from that conviction, for which he successfully completed a home confinement and supervised release sentence, Dr. ROWEN has remained crime free.

Starting around 1997, Dr. ROWEN found himself in contact with various individuals harboring elaborate beliefs concerning the monetary system and the government's authority over commerce.  Dr. ROWEN found himself endorsing the belief that the Federal Reserve system was based on a lie.  The probation officer calls Dr. ROWEN a "tax defier" (PSR, ¶9) and citing a book he co-authored as support. According to the Probation Officer, "*They Own It All (Including You!) by Means of Toxic Currency*" offers various tax avoidance techniques, including the purchase of gold and silver as a means of avoiding income taxes" (PSR, ¶9, fn. 1).  A review of this confusing text, however, makes it clear that Dr. ROWEN is stating his case for the corruption of the monetary system.  The thrust of the book is that Federal Reserve Notes are essentially IOUs from the government to the Federal Reserve.  As a result of making purchases with other citizen's IOU, theft is committed by an unseen

creditor.   As a result, citizens are forced to accept "fiat currency", specifically currency that derives value by government decree rather than actual value.   The government then "orders" the citizen to accept the value it designates to such currency.  The undercurrent to all the corruption is "the Mark of the Beast".  A quasi-religious metaphor used to describe the motives of those in power.   Despite this confused and circular reasoning, there are no chapters outlining specific strategies to avoid paying taxes.  There is discussion of the government's authority to collect taxes over those of the state, however, most of the book is a conceptual discussion of the evils of government power.

The author's own description of the novel on Amazon reads as follows:

*This book proves, in simple easy language, that we are living in a "Matrix". Behind a fraudulent and corrupt "monetary" system lies a hidden creditor. This book proves that this creditor is actually the puppeteer of an insolvent government and hidden master of all American citizens and courts. The creditor has deviously devised a monetary system based on exchange of debt owned and or liened by the creditor. As one may not see one specific tree in the forest, one does not see a hidden mark (lien) on every transaction he makes, until that specific mark is actually pointed out. Then it becomes visible for all time. "They Own It All" proves that we all have become subject to a*

*devious scheme for our daily transactions. The book reveals the common denominator for the economic implosion, loss of unalienable rights, rise of government tyranny, and how the servant (government) became the master, though itself serving a well hidden higher master. By making the invisible (toxic and liened currency) visible the Reader is empowered to remedy a collapsing society with solid steps to create a new order for the People, not the government and its hidden puppeteers.*

The above "book blurb" is essentially the "hook" for readers to know what the book is about.  A reader searching the title on Amazon would see the cover of the book and this book description. There is nothing in the description of the book that advertises it as a manual for tax evasion. The book appeals to like-minded individuals who, for a variety of reasons, believe the government to be overreaching and corrupt. This is nothing new or revolutionary.  Clearly, this does not excuse his conduct in the instant matter, but the court should take into consideration the context of the book.  Dr. ROWEN was, at that time, under the influence of several conspiracy theorists. The influence of these individuals had on Dr. ROWEN is evident in the publishing of the book.  The co-author, Ronald McDonald (actual name), received a monthly stipend from Dr. ROWEN for over a year to "assist" him in writing the book.  Ronald McDonald is a frequent contributor to "fringe theory" websites and

can be found on a video being interviewed about the book by radio host, Alex Jones. This is the same radio host who was sued successfully for claiming victims of the Sandy Hook massacre were "actors" and the killings were staged.

Despite his actions and distorted beliefs in regards to the monetary system, Dr. ROWEN has accepted responsibility for his conduct.  He has agreed to pay full restitution to the government and is prepared to do so at the sentencing hearing.

## IV.

## INVOLVEMENT IN THE INSTANT OFFENSE

Dr. ROWEN committed the instant offense because he adopted what can only be considered "conspiracy thinking" regarding the corruption of the Federal Reserve system.   He surrounded himself with like-minded individuals and justified his actions under the guise of the "original intent" of the US Constitution.  After nearly three years and several attorneys, including representing himself, Dr. ROWEN has come to the realization that he was wrong.  He was misled and adopted untruths regarding the monetary system.

Dr. ROWEN understands that his conduct in the instant offense was wrong and sincerely regrets his involvement.  He expressed remorse to the USPO during the Presentence Interview for his conduct's impact on his wife, his patients and his future.  Dr. ROWEN intends to demonstrate this remorse on his sentencing date by paying the agreed upon restitution in full.

## V.
## IN ADDITION TO CONSIDERING THE GUIDELINES, THE COURT MUST CONSIDER THE DIRECTIVES SET FORTH IN § 3553(a)

The factors set forth in § 3553(a) fall into three general categories: (1) the nature of the offense; (2) the history and character of the defendant; and (3) the needs of the public and the victims of the offense. In this case, analyzed separately, each category considering the specific statutory factors under § 3553(a), including the advisory guidelines, weigh in favor of a fair and reasonable sentence.

**First, considering the nature of the offense**. Dr. ROWEN was convicted of tax evasion. There was nothing egregious or particularly dangerous about the commission of his offense. There were no third parties who were injured or suffered economic harm as a result of his actions. Dr. ROWEN will make the government whole at the time of sentencing.

**The second general category the Court should consider – the history and character of the defendant.** As stated in the section above, the Booker decision now clearly permits a sentencing court to consider even those factors which the Guidelines previously generally precluded courts from considering: the so-called "Section 5H factors." See U.S.S.G. § 5H, *et seq.* In this case, factors such as Dr. ROWEN's age, U.S.S.G. § 5H1.1; vocational skills, U.S.S.G. § 5H1.2; physical condition, U.S.S.G. § 5H1.4, and family ties and responsibilities, U.S.S.G. § 5H1.6.

The factors in this category can be considered by this court in imposing a just sentence.

In the instant case, the court should consider the factors discussed above, specifically the facts and circumstances surrounding the following:

A. **Age and Physical Health:**

Dr. ROWEN is now seventy-two years old and subject to normal conditions associated with aging.  As the USPO notes, Dr. ROWEN suffers from a degenerative back condition which resulted in no disc in the lumbosacral joint (L5-S1).   Dr. ROWEN reports that the condition causes "localized horrific pain" (PSR, ¶57).  In addition, Dr. ROWEN suffers from macular degeneration.  This condition runs in his family and will manifest in a gradual loss of sight and, potentially, blindness (see letter attached as Exhibit C).  This illness weighs heavily on Dr. ROWEN because he knows that he has less than ten years left of active practice.  His role as a care giver and doctor is extremely important for Dr. ROWEN and he desires to practice for as long as possible.

Most importantly, the court should consider Dr. ROWEN's age in determining the appropriate sentence.  Any period of custody for a man of Dr. ROWEN's age would be devasting to his health and ability to earn an income.  In addition, any lesson to be learned by his conduct has already been driven home over the past three years. Dr. ROWEN has lived with the stress attending to the

circumstances of this offense: IRS investigations, US Attorney target letter, the filing of criminal charges, retaining criminal and civil attorneys, the uncertainty of his family's future.  These factors have resulted in mental and physical health issues for both Dr. ROWEN and his wife.  No amount of custodial time would impress the error of his judgement any more than the last three plus years of investigation.

A very important factor to take into account when considering Dr. ROWEN's age and health for sentencing is the continuing danger and uncertainty of the COVID pandemic and the numerous variants reaping havoc on the population, medical facilities and prisons.  This court is well aware that the Center for Disease Control (CDC) has specifically identified individuals at Dr. ROWEN's age to be at elevated speed and efficiency the virus spreads in prison environments.

B. **Vocational Skills and Work History**.

Dr. ROWEN has spent years in school and continuing education to be able to treat patients and maintain his clinics.  He has served thousands of patients and provided beneficial health services to them.  The patients rely on him and the services he provides.  Dr. ROWEN is the driving force in the Rowen-Su Medical Clinic's mission to provide holistic health care not dependent on prescribed medication.  To that end, Dr. ROWEN continuously attends conferences, lectures, conducts research and shares ideas with other practitioners.  Dr. ROWEN's

supervision of the operations of the clinic is a necessary component to its continued success.  This factor lends further support to a non-incarceration sentence.

The court should also note that, despite Dr. ROWEN's illegal conduct in this case, he has made a significant impact on the lives of his employees and patients. Since the investigation began to the present, Dr. ROWEN has employed eight health care professionals. As previously noted, those employees have fifteen combined minor dependents. In short, Dr. ROWEN, in keeping his business running, has provided means of support impacting twenty three persons.

It should also be noted that Dr. ROWEN's presence in the day to day operations of the clinic has been a necessity.  Dr. ROWEN's absence from his practice for any prolonged period could overload Dr. Su's practice and cause the shutdown of the clinic.  The fallout would be suffered by Dr. ROWEN's employees, their families, his own family and, most importantly to Dr. ROWEN, the patients he is devoted to as a care provider.

The court should also take into account the collateral consequences attached to his plea in the instant matter. A felony tax evasion conviction will necessarily trigger an action on his medical license.  Dr. ROWEN will be faced with another legal proceeding to defend his actions before the board in an effort to maintain his ability to practice medicine.  This is significant in that it is directly related to his ability to earn an income, and on a more basic level, the practice of medicine and

caregiving has defined his entire life.  This court can understand the amount of stress and pain on an individual when their entire professional lifetime of good works and reputation could come to a crashing end.  This factor, in combination with his advanced age, makes Dr. ROWEN's future uncertain.

### C. **Family Ties and Responsibilities:**

The court should also consider Dr. ROWEN'S family ties and stability when imposing sentence.  Dr. ROWEN has been a stable and positive father figure to three very productive and successful, now-adult children.   Dr. ROWEN continues to provide his children and his six grandchildren with love, support, and fatherly advice.   Dr. ROWEN's strong support system and family obligations will help ensure that he successfully complete his term of supervised release and return to a productive work life.

### D. **Criminal History:**

At seventy-two years old, Dr. ROWEN has led an exemplary life, save for his issues with the monetary system.  Twenty five years passed between his conviction for tax charges in 1997.  During that period of time, Dr. ROWEN was never arrested and was never charged with a crime until the instant offense.  As discussed in the PSR, Dr. ROWEN does not smoke, drink or use drugs.  For the past twenty five years, Dr. ROWEN has been a valued and caring physician and has employed and supported over twenty employees.  Unfortunately, for Dr. ROWEN, he is easily

swayed by ideological positions counter to the established monetary system of this country.  It was precisely this susceptibility that was the driving force behind his conduct in this case.  Dr. ROWEN has never committed a violent offense or a crime against another person.  His record supports that he is not a danger to the community at large.  Dr. ROWEN's belief system has placed him in a situation in which a seventy-two year old licensed physician now faces the possibility that he will be imprisoned for his reliance on the misguided interpretations of laws by non-lawyers. The past three years of litigation and looming prison sentence has allowed Dr. ROWEN to be adequately informed by his lawyers regarding his previous beliefs. He now understands the errors in his judgement and interpretations of the laws and will act in accordance with them.

Despite his conduct in this matter, Dr. ROWEN's advanced age and lack of significant criminal history support the contention that he will not reoffend.  Dr. ROWEN understands the nature of his actions and has made great efforts to gather the funds to make the government whole.

E: **Acceptance of Responsibility.**

It is clear that Dr. ROWEN has accepted responsibility for his conduct in this matter.  He has entered a guilty plea and adopted the factual basis recited in the plea agreement.  Dr. ROWEN is now acutely aware of the nature and circumstances of his actions and that he is committed to living out the remainder of his life as a

productive citizen.   In addition, Dr. ROWEN's acceptance of responsibility and guilty plea has spared the government the financial burdens of trial in this matter. This is particularly important in light of the continuing stresses the global COVID pandemic has placed on the criminal justice and jury system.

Dr. ROWEN's acceptance of responsibility is also evident in his desire to provide restitution for his conduct.   In that regard, Dr. ROWEN will tender full restitution at or before the date of sentencing.   This figure was difficult for Dr. ROWEN.   His good faith efforts to make the government whole required him to seek out loans from family members.   Dr. ROWEN understands he will have to continue working well into his eighties as a result of this conduct.

**Finally, the third § 3553 category—the needs of the public and the victim of the offense.** When weighing this category, the Court should consider that Dr. ROWEN's plea agreement requires him to pay restitution to the United States**,** the victim in this case.   Dr. ROWEN has complied with United States tax law since 2019, filing his tax returns without incident.   Additionally, while out of custody on his own recognizance, Dr. ROWEN has complied with all of the Court's orders and scheduling, evidencing that an out-of-custody sentence under supervision is the appropriate punishment in this case.

///

///

# V.
## THE GUIDELINES

Pursuant to the facts and plea agreement in this matter, the base offense level for a violation of 26 U.S.C. § 720, Tax Evasion resulting in a loss of more than $550,000 and less than $1,500,000, U.S.S.G. §2T1.1, 2T4.1(H) and 2T1.1(a)(1), is twenty (20).  There is a three level (-3) reduction for Acceptance of Responsibility, under U.S.S.G. §3E1.1(a)–(b).  Dr. ROWEN is in Criminal History Category I.  The Adjusted Offense Level is seventeen (17).  The resulting guideline range is twenty-four to thirty (24-30) months.

Although the PSR indicates that Dr. ROWEN must serve a term of imprisonment (PSR ¶ 80), under Booker, the Court is not bound to the Guidelines' recommendations nor their commentary.  No statute expressly requires the Court to send Dr. ROWEN to prison.  The law that Dr. ROWEN violated, 26 U.S.C. § 720, permits the Court to impose a fine instead.  See 18 U.S.C. § 371 (individuals convicted under this section "shall be fined under this title *or* imprisoned") (emphasis added).  Pursuant to 18 U.S.C. § 3561(c)(1), Dr. ROWEN is statutorily eligible for "not less than one nor more than five years" of probation, so long as he pays a fine or restitution or completes community service.  18 U.S.C. §§ 3561; 3563(a)(2).  Dr. ROWEN's plea agreement requires him to pay $241,156.28 in restitution to the United States, which he is prepared to do (PSR ¶ 97).  Accordingly,

the Court has authority to grant Dr. ROWEN probation should it determine it a just punishment based on the facts of this case and his individual circumstances.

A weighing of the § 3553(a) factors justifies a below-guideline sentence of **probation**. In *United States v. Warner*, 792 F.3d 847, 852 (7th Cir. 2015), the Court of Appeals affirmed the district court's probation sentence for a defendant convicted of willfully evading $5.6 million dollars in taxes, despite a guideline advisory sentence of 46 to 57 months' imprisonment. The Seventh Circuit found a sentence of probation and community service reasonable based on the following factors: the defendant's good character, the "isolated and uncharacteristic nature" of his offense, his acceptance of responsibility through pleading guilty, the fines imposed on the defendant, and the fact that the government itself recognized the defendant's positive characteristics. *Id.*, at 864. Dr. ROWEN's guideline-advisory range is much lower than that in *Warner*, and he displays the mitigating factors the district court relied upon to impose a sentence in that case. Accordingly, a sentence of **probation** is reasonable and just.

## VI.
## CONCLUSION

Applying these considerations, a sentence of probation rather than incarceration is necessary to satisfy the purposes of sentencing set forth in § 3553(a). Dr. ROWEN understands that he should be punished for his illegal activity and is

prepared for the consequences of his actions.  The plea agreement Dr. ROWEN entered into with the Government allows him to argue that the court should grant a variance to the guidelines.  Of course, this Court is left with the ultimate discretion to sentence Dr. ROWEN to either probation or incarceration, as the Court sees fit. Dr. ROWEN now comes before this court to request that he be granted a sentence lower than that recommended by the Guidelines.  Dr. ROWEN's acceptance of responsibility, close family ties, strong support system, and perfect compliance with pretrial supervision conditions all support a sentence of probation as opposed to prison.

Dr. ROWEN has accepted responsibility for his conduct and understands the nature and consequences of his actions as well as the penalties for any future violation of United States laws.  He now has an acute awareness of both the gravity of his conduct and the factors that contributed to his criminal activity.   More importantly, Dr. ROWEN has had the opportunity to reflect upon his conduct and recognize the error in judgement which led to the instant offense.  His susceptibility to fringe ideology was particularly evident in the book he co-authored.  While the probation officer uses this to call him a "tax defier", the court should note there are no delineated chapters devoted to tax avoidance vehicles or a primer on breaking the law.  Instead, the largely verbose and unintelligible work is replete with circular reasoning and confounding logic.  The fact that Dr. ROWEN had the co-author,

Ronald McDonald, on a monthly retainer to help on the book only highlights the irrational behavior defining Dr. ROWEN's conduct at the time of the offense.

When viewed in light of his sincere desire to provide for his family, lack of criminal history, and history of perseverance, Dr. ROWEN's positive character traits far outweigh the negative and avoidable circumstances which led to his arrest in this case.  In addition, the court should take into serious consideration Dr. ROWEN's advanced age and the wildly unpredictable and deadly COVID pandemic.  The past two years have seen high numbers of severe illness and deaths amongst the inmate population of the BOP.  It requires no expertise to appreciate that Dr. ROWEN is particularly vulnerable to complication from the virus.  A sentence of incarceration might very well be a death sentence for Dr. ROWEN.

Dr. ROWEN's lifetime of productivity and hard work amply illustrate the character of this man.  There is virtually no chance this court will see him back on any violations.  As discussed above, Dr. ROWEN has the necessary tools-supportive family, marketable business skills and motivation, to succeed on a grant of supervised release.

Dr. ROWEN's guideline range is based solely on the amount of loss to the IRS for which Dr. ROWEN has agreed to full restitution.  While there are no aggravating factors behind Dr. ROWEN's conduct, the numerous and significant mitigating circumstances support a lenient sentence in this case.

It is for these reasons that Dr. ROWEN respectfully requests that this Court grant a variance from the Guidelines and grant a probation sentence.  In light of the factors and circumstances addressed above, Dr. ROWEN respectfully requests that the Court sentence him to **probation**.  In the alternative, should the court deem incarceration a necessary component of the punishment in this case, Dr. ROWEN submits a sentence in Zone C of the guidelines would allow him to take leave from the business for a short period to fulfill the courts' sentence.  The probation officer has had the opportunity to fully analyze the case and character of the defendant and does not dispute that Dr. ROWEN's advanced age, agreement to provide full restitution and compliance with unsupervised pretrial release are all factors the court can consider in determining an appropriate sentence.  In short, given Dr. ROWEN's positive traits, his sincere remorse, and his commitment to abiding by tax laws in the future, a **probation** sentence is a fair and just sentence which satisfies all of § 3553(a)'s outlined considerations.

Dated: January 19, 2022

Respectfully Submitted,

/s/ Marc X. Carlos
MARC X. CARLOS

Attorney for Defendant
Dr. Robert Rowen