STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

YOOSUN KOH (NYBN 5245220)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7034
    FAX: (415) 436-7234
    Yoosun.Koh@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 19-CR-00486-CRB** |
| Plaintiff, | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| v. | |
| ROBERT ROWEN, | Sentencing Date: January 26, 2022 |
| Defendant. | Time: 1:00 p.m. |
| | Judge: Hon. Charles R. Breyer |

I.     **INTRODUCTION**

    On September 26, 2019, a grand jury sitting in the Northern District of California returned a two-count indictment charging Defendant Robert Rowen and Teresa Su with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, (Count One), and charging Rowen with Tax Evasion, in violation of 26 U.S.C. § 7201 (Count Two). Dkt. 1. On January 16, 2020, the government obtained a superseding indictment charging Rowen and Su with Conspiracy to Defraud the United States (Count One) and Tax Evasion (Count Two). Dkt. 27.

On October 13, 2021, Rowen pleaded guilty to Count Two of the superseding indictment pursuant to a Rule 11(c)(1)(A) and 11(c)(1)(B) plea agreement.  Dkt. 123 (Plea Agreement).  All charges as to Su were dismissed on October 15, 2021.  Dkt. 124.

As set forth in the parties' plea agreement, the parties agreed to the following Guidelines calculation: base offense level 20, based on a tax loss amount of $1,209,587.63, pursuant to U.S.S.G. §§2T1.1(a)(1), (c)(1) and § 2T4.1(H), a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, for a total offense level of 17.  The parties are also in agreement with U.S. Probation's Guidelines calculation.  The Presentence Investigation Report ("PSR") calculates Defendant Rowen's total offense level as 17 and criminal history category as I, with a resulting Guidelines' sentencing range between 24 months and 30 months.  ¶¶ 4, 40-49, 54, 84.  The United States respectfully recommends the following sentence for the defendant: 21 months' imprisonment, to be followed by three years' supervised release with a special search condition; restitution to the Internal Revenue Service ("IRS") in the amount of $241,156.28; and a $100 special assessment.

## II.    SUMMARY OF FACTS

The government agrees with the recitation of facts at paragraphs 14 to 34 of the PSR.  In brief, as of September 26, 2019, the date of the original indictment, the defendant owed federal income tax liabilities in the amount of approximately $1,209,587.63 for tax years 1992 through 1997 and 2003 through 2008.  As set forth in the PSR, the defendant committed numerous affirmative acts of evasion of payment of the foregoing tax liabilities, including, among others:

- setting up and using Lotus as a nominee to receive payments to him from Soundview;
- directing his patients at his medical practice to issue checks to certain gold dealers as payment for medical services he rendered;
- directing the gold dealers to open bank accounts in their names in order to facilitate his gold purchases;
- purchasing millions of dollars of gold coins;
- filing false income tax returns and court filings containing false statements about the ownership of gold coins seized by the IRS in March 2014;
- filing an amended tax return and court filings claiming a fake casualty loss; and

- filing partnership tax returns that falsely reported each partner's income share.

The main method by which the defendant evaded payment of his tax debts was by converting his income into gold to conceal his ownership of those assets from the IRS.  He did this in two ways.  First, in November 2006, the defendant incorporated a nominee entity, Lotus Management, LLC, ("Lotus"), which he used to receive his income from Soundview Communications, Inc. ("Soundview"), and then used those funds to purchase gold.  Between approximately 2008 and approximately 2013, his *modus operandi* was to direct an employee from his medical practice to act as the nominal manager of Lotus, open a bank account and act as signatory, receive and deposit checks payable to Lotus from Soundview into that bank account, and then use the Soundview income to purchase gold coins on behalf of Rowen from his gold dealers, R.M. and J.P.

The defendant created Lotus for the purpose of concealing his income from Soundview and Lotus had no other legitimate business function.  There is no evidence of Lotus issuing any stock ownership to its alleged members.  Nor is there any evidence to suggest Lotus ever transacted any business.  From 2010 to 2013, Lotus used the deposits of the defendant's Soundview income to purchase gold coins from the defendant's gold dealer, then inappropriately claimed the purchases as a business deduction. The coins are not listed as an asset of the corporation.  Furthermore, the defendant intentionally tried to conceal the identity of his ownership, management, and financial interest in Lotus by directing other individuals to receive and deposit his Soundview checks and issue checks on behalf of Lotus, giving them signatory authority, and falsely representing on Lotus's corporate documents and tax forms that they were 99% shareholders of the company, even though they had no ownership interest in the business.  In fact, while the defendant claimed that he was an independent contractor employed by Lotus, he exclusively directed payments of funds and exercised day-to-day management and control over the operations of Lotus.

Second, between approximately 2007 and approximately April 2014, the defendant directed his patients at the medical practice to submit payment for medical services in the form of cash or checks payable to his gold dealers.  He instructed R.M. to open a Bank of America account so that patients' checks, as well as checks from Lotus, could be deposited directly into this account.  When the Bank of America account had sufficient funds to warrant shipping costs, R.M. would send the defendant gold

coins.  The defendant had a similar arrangement with J.P., who also opened a Bank of America account for the defendant to deposit checks from patients and Lotus that were then used to purchase gold.

Between approximately 2008 and approximately 2013, the defendant used income from the medical practice and Soundview to purchase more than $3.7 million in gold and silver coins from R.M. He also purchased gold and silver from J.P during 2013 and 2014 in the total amounts of $102,000 and $156,000, respectively.  According to R.M.'s records, the defendant made the following purchases of gold coins on behalf of himself, Lotus, and his wife, Su:

| Year | Rowen | Lotus | Su | Total |
|------|-------|-------|-----|-------|
| 2008 | $ 150,015 | $ 289,372 | $ 741 | $ 440,128 |
| 2009 | $ 214,155 | $ 164,409 | $ - | $ 378,564 |
| 2010 | $ 316,489 | $ 254,093 | $ - | $ 570,582 |
| 2011 | $ 465,309 | $ 307,323 | $ 3,597 | $ 776,229 |
| 2012 | $ 537,187 | $ 372,724 | $ 11,741 | $ 921,652 |
| 2013 | $ 410,253 | $ 248,635 | $ - | $ 658,888 |
| **Total** | **$ 2,093,408** | **$ 1,636,556** | **$ 16,079** | **$ 3,746,043** |

The defendant also filed false tax returns and court filings containing false statements to hide his ownership of gold coins, eliminate his tax liabilities, and underreport his interest in the medical practice. PSR ¶¶ 31-34.  The most egregious example relates to the defendant's attempt to claw back the tax liabilities that he had partially and involuntarily paid by filing a false 2014 Form 1040.  On or about March 20, 2014, the IRS seized gold and silver coins, along with other assets, from the defendant's medical practice and residence, pursuant to an Order Authorizing Entry onto Premises to Effect Levy. The IRS sold the seized assets and applied the sales proceeds of approximately $806,000 to the defendant's outstanding federal tax liabilities.

On or about October 19, 2015, the defendant and Su both filed their 2014 Forms 1040 claiming filing status Married Filing Separately.  On the Schedule D Capital Gains and Losses attached to his 2014 Form 1040, the defendant reported a $450 long-term capital gain resulting from the purported "sale" of "Collectibles" on or about March 20, 2014 with a cost basis and sales price in the amounts of $22,666 and $23,116, respectively.  The Form 8275 Disclosure Statement attached to his tax return also

stated that the assets that the IRS seized in March 2014 were primarily the separate property of Su.[1]  The defendant has since admitted that he owned all of the gold and silver coins that the IRS seized, and that they were not Su's separate property.  Dkt. 123 (Plea Agreement) ¶ 2(o).  He thus made false statements on his 2014 Form 1040 and incorporated documents by claiming that only $23,116 of the assets that the IRS seized in March 2014 belonged to him.

## III.    DISCUSSION

### A.    Rowen's Guidelines Range is 24-30 Months

The parties and U.S. Probation agree that the total tax loss is $1,209,587.63, the base offense level is 20, the total offense level is 17 (after acceptance of responsibility), and the defendant's Guidelines range is 24 to 30 months, calculated as follows.

#### 1.    Tax Loss Calculation

The agreed tax loss of $1,209,587.63 includes the defendant's federal tax liabilities for tax years 1992-1997 and 2003-2008, minus all voluntary payments made by the defendant before the date of indictment, plus interest and penalties as of the date of the indictment, as calculated by the IRS.

Section 2T1.1 of the Sentencing Guidelines contains the provisions governing most tax crimes, including 26 U.S.C. § 7201. To determine the base offense level under Section 2T1.1, the Guidelines require the calculation of the tax loss attributable to the defendant, and then the application of the tax loss table contained in Section 2T4.1 to set the base offense level.  In determining the tax loss, the court must include all relevant conduct, including both charged and uncharged conduct, and even acquitted conduct, if it finds the loss proven by a preponderance of the evidence. *See* U.S.S.G. § 1B1.3(a); U.S.S.G. § 2T1.1, comment. (n.2) ("[A]ll conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated.").  In tax cases, the Guidelines specifically provide for the inclusion of the

---

[1] Su's 2014 Form 1040 included a Schedule D Capital Gains and Losses that reported an approximately $428,000 long-term capital gain resulting from the purported "sale" of "Collectibles" on March 20, 2014 with a cost basis and sales price of approximately $378,000 and $806,000, respectively.  Su also reported that she had paid approximately $803,000 in estimated taxes in 2014.  The Form 8275 Disclosure Statement attached to the 2014 Form 1040 stated that the approximately $806,000 in gold coins seized by the IRS in March 2014 was Su's separate property, which she characterized as a tax payment supporting a refund claim of approximately $600,000.

tax loss resulting from all known tax fraud, in all years, as relevant conduct. *See* U.S.S.G. § 2T1.1, comment. (n.2).

Since this is an evasion of payment case, the tax loss is "the total amount of loss that was the object of the offense (i.e. the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1); *see also United States v. Trupin*, 2002 WL 31106343, at *2 (S.D.N.Y. Sept. 20, 2002) (where the defendant is convicted for willful failure to pay tax under § 7201 based on an evasion of payment theory, but not charged under § 7203, USSG § 2T1.1(c)(1) applies instead of USSG § 2T1.1(c)(3)). The "tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." U.S.S.G. § 2T1.1(c)(5); *see also United States v. Vernon*, 814 F.3d 1091, 1106-07 (10th Cir. 2016) (rejecting defendant's argument that the amount she had already paid in taxes, interest, and penalties after the start of the evasion period should be included in the tax loss calculations because "the Sentencing Guidelines define 'tax loss' under 26 U.S.C. § 7201 as the intended loss amount and not the actual loss. U.S.S.G. § 2T1.1(c)(1)); *Gerardo v. United States*, 191 F.3d 456 (7th Cir. 1999) ("the subsequent payment by the defendant or a third party of the tax fraud loss would not have diminished the loss for sentencing purposes pursuant to U.S.S.G. § 2T1.1(c)(5)").

In evasion of payment cases such as this, the Guidelines explicitly contemplate the inclusion of interest and penalties in the tax loss calculation. *See* U.S.S.G. § 2T1.1, comment. (n.1) ("The tax loss does not include interest or penalties, except in willful evasion of payment cases under 26 U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203."); *see also United States v. Black*, 815 F.3d 1048, 1054 (7th Cir. 2016); *United States v. Lombardo*, 582 Fed. Appx. 601, 618-20 (6th Cir. 2014) (unpublished); *United States v. Thomas*, 635 F.3d 13, 16-18 (1st Cir. 2011); *United States v. Josephberg*, 562 F.3d 478, 501-03 (2d Cir. 2009); *United States v. Barker*, 556 F.3d 682, 689-90 & n.2 (8th Cir. 2009).

The Ninth Circuit has addressed neither the issue of the effect of defendant's pre-indictment payments on the tax loss amount nor the question of whether penalties and interest should be included in the tax loss calculation. Here, the parties have agreed on a tax loss amount that has been calculated by first identifying every federal tax liability for tax years 1992-1997 and 2003-2008, and then reducing this amount by all *voluntary* payments made by the defendant before the date of indictment. The

defendant should not get credit for seizures, collections, or levies against his outstanding tax liabilities because these were involuntary payments.  Finally, interest and penalties calculated as of the date of the indictment have been added to the total tax loss amount.  Using this metric, as detailed in the following table, the tax loss for Count Two of the Indictment, 26 U.S.C. § 7201, is **$1,209,587.63**.

**Tax Loss Calculation**

All federal tax liabilities owed by the defendant during the "evasion period" (September 19, 2005, through September 13, 2018) and which remain unpaid after voluntary payments are credited (tax, interest, penalties calculated through September 26, 2019).

| Tax Year | Tax Form | Due Date of Return | Date Return Filed | Tax Due as of Indictment Date | Penalties as of Indictment Date | Interest Manually Calculated to Indictment Date | Total for Tax Year | |
|---|---|---|---|---|---|---|---|---|
| 1992 | 1040 | 4/15/1993 | 6/22/1998 | $29,708.09 | $14,646.62 | $152,552.95 | $196,907.66 | |
| 1993 | 1040 | 4/15/1994 | 6/29/1998 | $26,824.00 | $14,018.00 | $128,503.02 | $169,345.02 | |
| 1994 | 1040 | 4/15/1995 | 6/29/1998 | $33,113.00 | $15,614.92 | $140,763.24 | $189,491.16 | |
| 1995 | 1040 | 4/15/1996 | 6/29/1998 | $25,109.00 | $10,411.32 | $92,832.00 | $128,352.32 | |
| 1996 | 1040 | 4/15/1997 | 5/18/1998 | $78,678.51 | $21,074.09 | $234,459.45 | $334,212.05 | |
| 1997 | 1040 | 4/15/1998 | 7/6/1998 | $34,155.00 | $2,276.72 | $76,363.74 | $112,795.46 | |
| | | | | | | | Total 1992 to 1997 | $1,131,103.67 |
| | | | | | | | | |
| 2003 | 1040 | 4/15/2004 | 9/13/2010 | $0.00 | $0.00 | $2,020.13 | $2,020.13 | |
| 2004 | 1040 | 4/15/2005 | 9/20/2010 | $15,068.00 | $7,589.10 | $19,077.24 | $41,734.34 | |
| 2005 | 1040 | 4/15/2006 | 9/27/2010 | $4,181.00 | $2,214.12 | $4,704.79 | $11,099.91 | |
| 2006 | 1040 | 4/15/2007 | 10/14/2010 | $5,765.00 | $2,780.58 | $5,409.90 | $13,955.48 | |
| 2007 | 1040 | 4/15/2008 | 7/23/2010 | $4,902.00 | $1,326.05 | $3,446.05 | $9,674.10 | |
| 2008 | 1040 | 4/15/2009 | 9/6/2010 | $0.00 | $0.00 | $0.00 | $0.00 | |
| | | | | | | | | |
| | | | | | | | Total 2003 to 2008 | $78,483.96 |
| | | | | | | | | |
| | | | | | | | Total for All Years | $1,209,587.63 |

2.      **Guidelines Calculation**

The parties and U.S. Probation are in agreement that the total offense level is 17.  Under Section 2T4.1(H), a tax loss of $1,209,587.63, which is more than $550,000 but less than $1,500,000, produces a base offense level of 20.  The government also agrees with Probation that the defendant has one criminal history point, which places him in criminal history category I.  Based on criminal history category I and total offense level 17 (after acceptance of responsibility), the defendant faces a Guidelines range of 24 to 30 months' imprisonment.

|  | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| Base offense level | § 2T1.1(a)(1), (c)(1) and § 2T4.1(H)<br><br>Tax Loss of $1,209,587.63, which is more than $550,000 but not more than $1,500,000. | 20 |
| Specific offense characteristics | N/A | |
| Adjusted offense level | | 20 |
| Acceptance of responsibility | § 3E1.1 | -3 |
| Total offense level | | 17 |
| Criminal History Category | | I |
| **RANGE** | | **24-30 months** |

B.      **The Government's Recommended Sentence of 21 Months is Sufficient But Not Greater than Necessary**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a).  The Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process.  *See Carty*, 520 F.3d 991; *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).   The Court should begin the process of determining an appropriate sentence by first calculating the correct sentencing

range under the Guidelines.  After determining the appropriate advisory Guidelines calculation, the

Court should then evaluate the sentence for substantive reasonableness in light of the factors set forth

under 18 U.S.C. § 3553(a), to include:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4)   the need for the sentence imposed to protect the public from further crimes of the defendant; and
>
> (5)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991-93.

Consistent with its promises in the parties' Plea Agreement, the government recommends that

the Court sentence the defendant to a term of imprisonment of 21 months, followed by three years of

supervised release with the standard conditions recommended by the Probation Office and a special

search condition.  The government also requests restitution in the amount of $241,156.28 and a $100

special assessment.  A custodial sentence—instead of probation— is necessary to reflect the seriousness

of the defendant's offense, promote respect for the law, and afford adequate deterrence to criminal

conduct.  However, the government believes that a three-month downward variance from the Guidelines

range is justified by the Section 3553(a) factors.

Certainly, the nature and circumstances of the defendant's offense are serious.  The defendant

engaged in a decade-long campaign to frustrate the IRS's efforts to collect his undisputed tax liabilities,

wasting enormous resources, and drawing others (including his wife and employees) into the scheme.

He used nominee entities and nominee bank accounts to conceal his income and then funneled that

income to his gold dealers to purchase gold coins.  Even after the IRS executed a legitimate seizure of

gold and silver coins at the defendant's residence and medical practice to satisfy some of his tax

1   liabilities, the defendant attempted to claw them back by filing an income tax return containing false

2   statements about the ownership of those assets.  Accordingly, a sentence of imprisonment is appropriate

3   to reflect the seriousness of the defendant's offense.

4        The defendant's criminal history and longstanding pattern of using civil litigation to

5   illegitimately extinguish his tax liabilities and frustrate the IRS's collection efforts also counsel in favor

6   of a custodial sentence that will promote respect for the law.  As detailed in the PSR, the defendant has

7   one felony conviction under 26 U.S.C. § 7212(a) for Corrupt Endeavor to Impede the IRS.  In that case,

8   he provided false information to an IRS agent and then filed a "Notices of Interest" against the property

9   of the special agent investigating him as well as the IRS District Director, knowing that such notices

10   would encumber their property. He did this in an effort to intimidate the IRS into terminating the

11   investigation into his activities.  As part of the plea agreement, the defendant agreed to diligently

12   cooperate with the IRS with the object of filing true and correct income tax returns and paying past due

13   taxes for the years 1992 through 1997.

14        The defendant never held up his end of the deal.  In 2001, he filed for bankruptcy and argued that

15   his assessed tax liabilities for the taxable years 1992 through 1997 were dischargeable in bankruptcy.

16   After trial, the Bankruptcy Court found that the defendant's assessed tax liabilities for these tax years

17   were excepted from discharge under 11 U.S.C. § 523(a)(1)(C) because he willfully attempted to evade

18   or defeat those tax liabilities.

19        The defendant also demonstrated a similar lack of respect in his contacts with this Court.  In

20   August 2003, the United States filed a civil lawsuit to reduce the defendant's outstanding assessed tax

21   liabilities from 1992 through 1997, in the total amount of $1,124,800.90, to judgment., and then moved

22   for summary judgment.  In response, the defendant filed a document entitled "Notice of Remittance"

23   with this Court, and then lodged a gold coin with the Court that he referred to as a "Coin of the Realm."

24   The defendant claimed that this coin extinguished his assessed tax liabilities.  In May 2005, the Court

25   granted the government's motion for summary judgment and reduced the defendant's assessed tax

26   liabilities for the taxable years 1992 through 1997 to judgment.  Undeterred, in September 2005, Rowen

27   filed civil actions in this Court, seeking a declaratory judgment that they were not a "taxpayer" subject

28   to income taxes.  The court dismissed his complaint.

The need for a custodial sentence that affords an adequate deterrence to criminal conduct is also particularly applicable here.  General deterrence occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch 2, pt. T, introductory cmt.; *see also United States v. Ture*, 450 F.3d 352, 359 (8th Cir. 2006) (vacating sentence where the District Court "failed to consider the importance of a term of imprisonment to deter others from stealing from the national purse."); *United States v. Burgos*, 276 F.3d 1284, 1289, n.6 (11th Cir. 2001) ("For a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence.").  A sentence of imprisonment is necessary to deter other individuals who may be tempted to improperly evade payment of their tax liabilities, as the defendant did in this case.

Notwithstanding these considerations, the government believes that a downward variance of three months from the Guidelines range is appropriate because, as of January 2022, the defendant has paid the majority of his outstanding tax liabilities.  He has also agreed to pay $241,156.24—the full restitution amount—at the time of sentencing.  Dkt. 123 (Plea Agreement) ¶ 9; PSR ¶ 101.  This is testament to the defendant's acceptance of responsibility and rehabilitation.  The defendant's age and medical conditions are also important considerations that weigh in favor of a slightly reduced custodial sentence.  In light of the defendant's history and characteristics, the government considers the defendant to be at low risk of recidivism and hopes that a sentence of 21 months is sufficient to deter him from committing future tax offenses.  This sentence provides adequate punishment, but will also likely allow the defendant to return to his medical practice.

### C.   Restitution

The parties have agreed that the total restitution amount is $241,156.28.  A detailed breakdown of the restitution amount is provided below:

**Restitution Calculation**

| Year | Original Tax Assessed from Filed Tax Return | Additions / Subtractions from Original Tax | Date of Addition / Subtraction | Net Tax Due for Tax Year | Payment | Date of Payment | Interest Due up to Date of Payment | Tax & Interest DueAfter Payment | Interest fromDate of Last Payment to Indictment Date | Restitution |
|---|---|---|---|---|---|---|---|---|---|---|
| 1992 | 30,835.00 | | | 30,835.00 | -5.36 | 9/30/1991 | 0.00 | 30,829.64 | | |
| | | | | | -8.00 | 4/15/1999 | 20,019.53 | 50,841.17 | | |
| | | | | | -181.00 | 4/15/2000 | 4,265.08 | 54,925.25 | | |
| | | | | | -932.55 | 6/14/2010 | 48,140.89 | 102,133.59 | | |
| | | | | | -4,641.08 | 8/15/2013 | 11,373.56 | 108,866.07 | | |
| | | | | | -119.88 | 8/21/2013 | 53.70 | 108,799.89 | | |
| | | | | | -48,030.07 | 3/20/2014 | 1,903.23 | 62,673.05 | | |
| | | | | | -110,542.67 | 10/1/2014 | 1,012.53 | 46,857.09 | 0.00 | 0.00 |
| 1993 | 27,120.00 | 49,970.00 | 5/22/2000 | 77,090.00 | -296.00 | 4/15/1994 | 0.00 | 76,794.00 | | |
| | | | | | -412,111.71 | 10/1/2014 | 199,349.67 | 135,968.04 | 0.00 | 0.00 |
| 1994 | 33,116.00 | 50,109.00 | 5/22/2000 | 83,225.00 | -3.00 | 4/15/1995 | 0.00 | | | |
| | | | | | -253,474.12 | 10/1/2014 | 192,003.30 | 21,751.18 | | |
| | | | | | -58,383.28 | 3/18/2015 | 302.42 | 36,329.68 | 0.00 | 0.00 |
| 1995 | 25,112.00 | 65,946.00 | 5/22/2000 | 91,058.00 | -3.00 | 4/15/1996 | 0.00 | 91,055.00 | | |
| | | | | | -420,834.42 | 3/18/2015 | 187,471.62 | -142,307.80 | 0.00 | 0.00 |
| 1996 | 29,744.00 | 49,202.00 | 6/19/2000 | 78,946.00 | -3.00 | 4/15/1997 | 0.00 | 78,943.00 | | |
| | | | | | -262.49 | 11/26/2001 | 36,759.03 | 115,439.54 | | |
| | | | | | -153,710.48 | 3/18/2015 | 105,252.27 | 66,981.33 | 14,057.61 | 81,038.94 |

| 1997 | 33,115.00 | 1,040.00 | 7/31/2000 | 34,155.00 | 0.00 | | | 34,155.00 | 71,709.45 | 105,864.45 |
|---|---|---|---|---|---|---|---|---|---|---|
| 2003 | 19,749.00 | | | 19,749.00 | -483.34 | 10/11/2016 | 15,318.55 | 14,835.21 | | |
| | | | | | -7,500.00 | 1/31/2017 | 182.83 | 7,518.04 | | |
| | | | | | -25,000.00 | 3/29/2017 | 47.11 | -17,434.85 | | |
| | | | | | -10,000.00 | 6/9/2017 | | -27,434.85 | | |
| | | | | | -6,155.00 | 4/15/2019 | | -33,589.85 | 0.00 | 0.00 |
| 2004 | 15,068.00 | | | 15,068.00 | 0.00 | | | 15,068.00 | 14,218.75 | 29,286.75 |
| 2005 | 5,688.00 | -1,507.00 | 6/24/2013 | 4,181.00 | 0.00 | | | 4,181.00 | 3,430.95 | 7,611.95 |
| 2006 | 5,765.00 | | | 5,765.00 | 0.00 | | | 5,765.00 | 3,944.13 | 9,709.13 |
| 2007 | 4,902.00 | | | 4,902.00 | 0.00 | | | 4,902.00 | 2,743.06 | 7,645.06 |
| 2008 | 2,112.00 | | | 2,112.00 | -300.00 | 4/15/2009 | 0.00 | 1,812.00 | | |
| | | | | | -3,374.07 | 10/11/2016 | 519.65 | 1,042.42 | 0.00 | 0.00 |
| | | | | | | | | | | |
| | | | | | | | | | **TOTAL** | **241,156.28** |

IV.     **CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the Court sentence the defendant to 21 months' imprisonment, to be followed by three years' supervised release with a special search condition; restitution to the IRS in the amount of $241,156.28; and a $100 special assessment.

DATED:  January 19, 2022                              Respectfully submitted,

                                                      STEPHANIE M. HINDS
                                                      United States Attorney


                                                       _/s/ Yoosun Koh_____
                                                      YOOSUN KOH
                                                      Assistant United States Attorney